2010 UT App 240

**STATE of Utah, Plaintiff and Appellee,**

v.

**Abraham Mario SHAFFER, Defendant and Appellant.**

No. 20090274–CA.

Court of Appeals of Utah.

Aug. 26, 2010.

Allyson Barker, Salt Lake City, for Appellant.

Mark L. Shurtleff and Jeanne B. Inouye, Salt Lake City, for Appellee.

Before Judges DAVIS, McHUGH, and ORME.

## AMENDED OPINION [1]

McHUGH, Associate Presiding Judge:

¶1 Abraham Mario Shaffer appeals his sentence for aggravated robbery, a first degree felony, see Utah Code Ann. § 76–6–302 (2008).[2] Shaffer contends that the State breached the plea agreement and that the

trial court's failure to recognize the breach constituted plain error. He also argues that defense counsel's failure to object at sentencing constituted ineffective assistance of counsel. We affirm.

## BACKGROUND

¶2 On January 30, 2008, Shaffer, along with two other men, entered a mobile phone store. Shaffer used a gun to assault an employee, threatening to "blow [his] head off," and Shaffer and the other two men proceeded to rob the store of some mobile phones and $35 from a cash register. The three men were arrested, and Shaffer was subsequently charged with aggravated robbery. The State notified Shaffer that it would seek both a dangerous weapon enhancement for the use of a gun, see id. § 76–3–203.8(2)(a) (providing for a weapons enhancement of one year in addition to the minimum term of the sentence), and a group or gang enhancement, see id. § 76–3–203.1(3)(e) (providing for a gang enhancement on a first degree felony of an additional indeterminate term of nine years to life) (current version at id. § 76–3–203.1(3)(e) (Supp.2009)),[3] to the aggravated robbery charge.

¶3 Shaffer agreed to enter a guilty plea to aggravated robbery in exchange for the State agreeing to three conditions: (1) the State agreed not to pursue gang and gun enhancements; (2) the State agreed to join in a motion to reduce Shaffer's conviction from a first to a second degree felony if he successfully completed probation; and (3) the State agreed to recommend that Shaffer be sentenced to a suspended prison sentence and two years in jail with credit for time served.

¶4 At a December 15, 2008 change of plea hearing, defense counsel recited the terms of the plea agreement to the trial court. The trial court then instructed Shaffer that the statutory sentence for aggravated robbery

---

1. This Amended Opinion replaces the Opinion in Case No. 20090274–CA issued on July 1, 2010.

2. Because most of the relevant provisions of the Utah Code have not changed, we cite to the current version for the reader's convenience unless otherwise indicated.

3. The applicable gang enhancement sentence was modified as of May 12, 2009, (two months after Shaffer's sentencing hearing) to five years to life. See Utah Code Ann. § 76–3–203.1(3)(e) amend. notes (Supp.2009).

was "five years to life in prison," that the court was not bound by the plea agreement, and that Shaffer would waive certain rights by pleading guilty. The trial court specifically stated, "I want to make it clear that I could give you the five-year-to-life sentence and there's no promise, no guarantee of any kind that you won't get that." Shaffer confirmed that he understood and verbally entered a guilty plea to the charge of aggravated robbery. The plea agreement was signed by Shaffer, defense counsel, and the prosecutor.

¶ 5 On March 9, 2009, the trial court conducted sentencing proceedings, by which time Shaffer had already served one year and thirty-nine days (or just over thirteen months) in jail. Prior to the sentencing hearing, Adult Probation and Parole (AP & P) prepared a pre-sentence investigation report (PSI) for the court, in which it determined that Shaffer had a high risk of recidivism and recommended that he be sentenced to five years to life in prison. AP & P identified several specific concerns with respect to Shaffer: his history of alcohol and drug use, his involvement with gang members and his lack of candor in denying that he was a gang member, his use of a gun and threatening statements in committing the crime, his multiple disciplinary write-ups while in jail, his numerous past offenses, and his involvement in other documented incidents of violence.

¶ 6 At the sentencing hearing, defense counsel set forth the terms of the plea agreement, representing to the court that the State had agreed to "recommend a year in jail beyond the time that [Shaffer] had already served and at the conclusion of that year, [the State] would recommend [Shaffer] be placed on probation." Defense counsel also provided the court with information tending to mitigate the potentially adverse elements discussed in the PSI, including information indicating that Shaffer had significant family and community support. After defense counsel presented the recommendations and mitigating factors, the trial court gave Shaffer an opportunity to comment. Shaffer apologized for his actions but did not comment on defense counsel's explanation of the recommended sentence.

¶ 7 Next, the prosecutor confirmed the agreement as set forth by defense counsel and recommended that Shaffer serve an additional year in jail, with no credit for time served, and that he be placed on probation, with gang conditions, for three years. However, in response to defense counsel's statements regarding the benefits of Shaffer's family support, the prosecutor identified some dishonest behavior by Shaffer's relatives during the proceedings and suggested that their statements regarding Shaffer were likely unreliable. In response to a question from the trial court, the State also indicated that the victim of the robbery "felt that Shaffer should be incarcerated for as long as possible [but] was fine with the resolution." Finally, in reiterating her recommendation, the prosecutor expressed her opinion that Shaffer's behavior "warrants, at minimum, another year in jail followed by 36–months probation."

¶ 8 The trial court rejected the State's recommendation in favor of that advanced by AP & P, noting that the seriousness of the crime "warrants the sentence of imprisonment." Shaffer was, therefore, sentenced to the indeterminate term of five years to life in prison.

## ISSUES AND STANDARDS OF REVIEW

¶ 9 Shaffer alleges that the State breached the plea agreement in three respects: (1) by recommending that Shaffer serve one year with no credit for time served rather than the agreed upon two years with credit for time served, (2) by not informing the pre-sentence investigator of the State's recommendation, and (3) by making statements at the sentencing hearing that impermissibly undermined the sentencing recommendation. None of these alleged breaches were raised at the sentencing hearing and were thus not preserved on appeal. Shaffer concedes that his claim is not preserved but challenges his sentence on the grounds of plain error and ineffective assistance of counsel. *See generally State v. Weaver*, 2005 UT 49, ¶ 18, 122 P.3d 566 (recognizing three circumstances where an issue may be addressed for the

first time on appeal: plain error, exceptional circumstances, and ineffective assistance of counsel).

¶ 10 To establish plain error, Shaffer must show that "(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the [defendant]." *State v. Cruz*, 2005 UT 45, ¶ 16, 122 P.3d 543 (first alteration in original) (internal quotation marks omitted). "If any one of these requirements is not met, plain error is not established." *State v. Dean*, 2004 UT 63, ¶ 15, 95 P.3d 276 (internal quotation marks omitted). For purposes of plain error review, the United States Supreme Court has recently clarified, "[T]he question with regard to prejudice is not whether [the defendant] would have entered the plea had he known about the future violation. When the rights acquired by the defendant relate to sentencing, the 'outcome' he must show to have been affected is his sentence." *Puckett v. United States*, —— U.S. ——, 129 S.Ct. 1423, 1433 n. 4, 173 L.Ed.2d 266 (2009) (citation omitted).[4]

¶ 11 "In order to succeed on an ineffective assistance of counsel claim, [a d]efendant must show (1) trial counsel's performance was deficient by falling below an objective standard of reasonableness, and (2) trial counsel's deficient performance prejudiced [the d]efendant by depriving him of a fair trial." *State v. Alfatlawi*, 2006 UT App 511, ¶ 17, 153 P.3d 804 (internal quotation marks omitted); *accord Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to demonstrate prejudice, Shaffer "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

## ANALYSIS

### I. Modification of the Recommended Sentence

¶ 12 First, Shaffer contends that the prosecutor breached the plea agreement by recommending that Shaffer serve one year with no credit for time served rather than the agreed upon two years with credit for time served set forth in the written plea agreement. *See generally United States v. Miller*, 565 F.2d 1273, 1274 (3d Cir.1977) ("[T]he [g]overnment must adhere strictly to the terms of the bargains it strikes with defendants."). Even if we were to accept Shaffer's position, Shaffer is not entitled to a remedy unless he can establish plain error or ineffective assistance of counsel.

### A. Plain Error

¶ 13 Even assuming that error existed, i.e., that the State breached the plea agreement by making a sentencing recommendation that differed from the one agreed to in the written plea agreement, the trial court's failure to recognize the breach was not plain error because the error was invited. *See generally Pratt v. Nelson*, 2007 UT 41, ¶ 17, 164 P.3d 366 ("[A] party cannot take advantage of an error committed at trial when that party led the trial court into committing the error.").

¶ 14 At sentencing, defense counsel was given the first opportunity to speak and immediately represented to the court that "the State agreed to recommend a year in jail beyond the time that the defendant had already served." Defense counsel reiterated this understanding near the end of her oral argument, stating, "I believe that if the Court would ... follow the State's recommendation in this matter and give [Shaffer] the opportunity to serve an additional year in the jail, that these types of infractions will not continue to occur." It was only after

---

4. Consequently, we do not consider Shaffer's argument that he would not have entered into the plea agreement had he known the recommended sentence would be modified. We note, however, that the modified sentence added approximately thirty-nine days to Shaffer's jail confinement, whereas he could have received an additional year for the weapons enhancement, *see* Utah Code Ann. § 76–3–203.8(2)(a) (2008), and an additional term of nine years to life in prison for the gang enhancement, *see id.* § 76–3–203.1(3)(e) (current version at *id.* § 76–3–203.1(3)(e) (Supp. 2009)), both of which were dismissed as part of the plea agreement.

defense counsel had informed the trial court of the recommendation that the prosecutor represented that "the State [was] recommending that the defendant be given 365 days in jail with no credit for time he's already served ... [followed by] 36–month probation."

¶ 15 Because defense counsel explicitly and affirmatively represented to the trial court that the plea agreement included the State's recommendation that Shaffer serve an additional year in jail, any error was invited and, therefore, could not have been obvious to the trial court. *See generally id.* ¶ 16 (declining to engage in "plain error review when counsel, either by statement or act, affirmatively represented to the [trial] court that he or she had no objection to the [proceedings]" (alterations in original) (internal quotation marks omitted)).

### B.   Ineffective Assistance

■ ¶ 16 From the record on appeal, we cannot ascertain defense counsel's reasons for agreeing to a modified sentence recommendation or whether Shaffer participated in that decision. Even assuming, without deciding, that defense counsel performed deficiently, however, we hold that the failure to object to the modification was not prejudicial. Thus, we need not decide whether it constituted deficient performance. *See State v. Medina–Juarez,* 2001 UT 79, ¶ 14, 34 P.3d 187 ("If a defendant fails to establish either of the two [ineffective assistance of counsel requirements], counsel's assistance was constitutionally sufficient, and we need not address the other [requirement].").

¶ 17 Because the trial court rejected the State's sentencing recommendation in favor of AP & P's recommendation in the PSI that Shaffer serve an indeterminate term of five years to life in prison, counsel's failure to object to the State's modified recommendation was not prejudicial. The court did not reference the State's recommendation when it sentenced Shaffer. Instead, the court emphasized the seriousness of the crime, stating that "the crime certainly warrants the sen-

tence of imprisonment." The court continued, "[I]t's such a serious crime ... I'm comfortable with [AP & P's] recommendations.... I'm going to follow them and impose the indeterminate term of five years to life in the State penitentiary." Where the trial court rejected the modified recommendation for just over twenty-five months in jail, it is not at all likely that the trial court would have followed the original recommendation that Shaffer spend twenty-four months in jail. Therefore, even if the modification were a breach, Shaffer was not prejudiced by it.

¶ 18 We also reject Shaffer's argument that the United States Supreme Court's decision in *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), requires that we presume prejudice. The *Santobello* decision examined a breach of plea agreement claim that had been properly preserved in the trial court. *See id.* at 259, 92 S.Ct. 495. The Supreme Court's subsequent decision in *Puckett v. United States,* —— U.S. ——, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009), considered a breach of plea agreement claim that had not been preserved and held that the plain error doctrine, including that doctrine's prejudice requirement, applies when such claims are raised for the first time on appeal. *See id.* at 1431–33. We see no reason why the prejudice analysis under the second prong of an ineffective assistance of counsel claim would be different. Under both claims, "the question with regard to prejudice is not whether [the defendant] would have entered the plea had he known about the future violation. When the rights acquired by the defendant relate to sentencing, the 'outcome' he must show to have been affected is his sentence." *Id.* at 1433 n. 4 (citation omitted). Shaffer cannot meet this burden here.

### II.   Failure to Make a Recommendation to AP & P

¶ 19 Second, Shaffer alleges that the State breached its promise to recommend the agreed upon sentence to the pre-sentence investigator.[5] Shaffer again argues that

---

5.  While the written plea agreement makes no mention of this promise, the prosecutor assented

to defense counsel's representation during the change of plea hearing that the State had agreed

plain error and ineffective assistance of counsel entitle him to a remedy.

## A. Plain Error

■ ¶ 20 Shaffer's only support for his argument that error occurred is the fact that the PSI does not mention the terms of the plea agreement. However, neither Shaffer nor the State provided any evidence regarding whether the prosecutor communicated the agreed recommendations to AP & P or whether it is standard practice for AP & P to include such recommendations, if made, in the PSI. Furthermore, despite Shaffer's contrary assertion at oral argument, we see no section of the PSI that sets forth a heading calling for the State's recommendation but that was left blank. Thus, we agree with the State that the fact that the recommendation was not referenced in the PSI does not prove it was not made.

¶ 21 Even if the State did fail to make the recommendation, however, the lack of evidence demonstrating that failure defeats the second prong of the plain error analysis, which requires that the error be such that "from a review of the record, the appellate court is led to the conclusion that given the circumstances, the trial court should have been aware that an error was being committed at the time." *State v. Verde*, 770 P.2d 116, 122 n. 11 (Utah 1989). The record in this case, which was silent as to whether the prosecutor made the promised recommendation, could not have adequately apprised the trial court of a breach, even if one existed.

¶ 22 Furthermore, Shaffer's contention that any deviation from the plea agreement should be plain if the sentencing judge also took the defendant's change of plea is not persuasive. Trial judges handle numerous matters, including many change of plea and sentencing hearings. Due to the time necessary for AP & P to prepare a PSI, weeks or even months may pass between the change of plea and sentencing. Under these circumstances, we will not presume that the trial court is plainly aware of deviations from the plea agreement at sentencing. We are particularly reluctant to do so when the defendant's counsel does not challenge the inconsistency.

## B. Ineffective Assistance

■ ¶ 23 The lack of evidentiary support for Shaffer's contention that the State failed to make a recommendation to AP & P likewise defeats his ineffective assistance claim because "[a]ppellants bear the burden of proof with respect to their appeals, including the burdens attending the preservation and presentation of the record." *State v. Litherland*, 2000 UT 76, ¶ 17, 12 P.3d 92. "Where the record appears inadequate in any fashion, ambiguities or deficiencies resulting therefrom simply will be construed in favor of a finding that counsel performed effectively." *Id.* Because the record is silent as to whether the prosecutor made the promised recommendations, we assume that defense counsel performed effectively.

¶ 24 Furthermore, even if the State did fail to make the recommendation to AP & P, defense counsel's failure to object was not prejudicial because it was unlikely that the recommendation would have impacted AP & P's conclusion. The PSI identified Shaffer as having a high risk of recidivism and identified multiple aggravating factors indicating that he would not be "amenable to supervision." Furthermore, AP & P was concerned enough by Shaffer's criminal history and attitude that it deviated from its own Criminal History Matrix in recommending a lengthy prison sentence for Shaffer, who had scored in the "Intermediate Sanctions" rather than the "Imprisonment" category of the matrix. Thus, it is likely that AP & P's conclusion would have remained the same regardless of whether the State made its promised recommendation.

## III. Statements Made by the Prosecutor at the Sentencing Hearing

¶ 25 Finally, Shaffer alleges that the prosecutor impermissibly undermined the State's

---

to "recommend ... both to the ... pre-sentence investigator and at the time of sentencing ... that the prison sentence ... be suspended and that the Court instead order Mr. Shaffer to serve two years in the County Jail, with credit for time served." The State has not disputed on appeal that the promise was made, only that there is no record evidence that it was breached.

promised sentencing recommendation by (1) requesting that Shaffer be subject to gang conditions as part of his probation; (2) making statements undermining Shaffer's family support; (3) commenting that the victim "felt that [Shaffer] should be incarcerated for as long as possible"; and (4) commenting that Shaffer should serve, "*at minimum,* another year in jail." (Emphasis added.)

¶ 26 A prosecutor may not undermine her own promised sentencing recommendation by expressing her personal reservations at the sentencing hearing. *See United States v. Benchimol,* 471 U.S. 453, 456, 105 S.Ct. 2103, 85 L.Ed.2d 462 (1985) (per curiam). However, a prosecutor has no responsibility to make such recommendations "enthusiastically." *See id.* at 455, 105 S.Ct. 2103. "If the prosecutor promises to recommend a certain sentence and does so, [s]he has not breached the bargain by also bringing all relevant facts to the attention of the court," 5 Wayne R. LaFave, Jarold H. Israel, Nancy King, & Orin S. Kerr, *Criminal Procedure* § 21.2(d), at 612 (3d ed.2007),[6] so long as the statements are neutral and do not imply that the information makes the State regret entering into the plea agreement, *see State v. Williams,* 2002 WI 1, ¶ 50, 249 Wis.2d 492, ¶ 50, 637 N.W.2d 733, ¶ 50 (finding a breach of the plea agreement where "the [s]tate covertly implied to the sentencing court that the additional information available [at the time of sentencing] ... raised doubts regarding the wisdom of the terms of the plea agreement").

¶ 27 We now consider each of the statements Shaffer contends undermined the sentencing recommendation to determine whether the statements, in fact, constituted breaches of the plea agreement and, if they did, whether Shaffer can prevail on either a plain error or ineffective assistance of counsel theory.

### A. Gang Conditions

¶ 28 First, we agree with the State that the prosecutor's recommendation of "gang conditions" as part of Shaffer's probation did not violate the State's promise not to seek gang enhancements in sentencing or impermissibly undermine the State's sentencing recommendation. Gang conditions are distinct from gang enhancements. Gang conditions may be used to prohibit a probationer from associations that may lead to probation violations, *see generally* Utah Code Ann. § 77–18–1(8)(a)(x) (Supp.2009) (permitting a court to require probationers to comply with "conditions the court considers appropriate"), and are one of a number of requirements that may be placed on a defendant as a condition of probation, *see id.* § 77–18–1(8)(a)(i)–(b)(ii). In contrast, gang enhancements actually impose increased penalties and require a finding "beyond a reasonable doubt that the person acted in concert with two or more persons." Utah Code Ann. § 76–3–203.1(1)(a) (Supp.2009). The State's promise not to pursue gang enhancements guaranteed only that the prosecutor would not ask that Shaffer be subject to the additional penalty of an indeterminate term of nine years to life beyond the penalty for the underlying first degree offense, *see id.* § 76–3–203.1(3)(e) (2008) (current version at *id.* § 76–3–203.1(3)(e) (Supp.2009)). There is nothing to indicate that the promise contemplated relieving Shaffer of probation conditions designed to prevent him from future gang involvement, and the State made no promise in the plea agreement to refrain from requesting gang conditions with respect to Shaffer's probation.

¶ 29 Furthermore, the PSI discussed Shaffer's association with gang members and found his denial of his own gang membership disturbing. The PSI referred to Shaffer's dubious "companions" as one of the most significant factors impacting AP & P's rec-

---

6.  *See, e.g., United States v. Salazar,* 453 F.3d 911, 914–15 (7th Cir.2006) (holding that the government did not breach its promise to recommend a sentence at the low end of the federal sentencing guidelines when the prosecutor, having done so, also called the defendant "a cold-blooded killer" at sentencing); *United States v. Has No Horses,* 261 F.3d 744, 750–51 (8th Cir.2001) (holding that the prosecutor did not breach a promise to recommend a sentencing reduction for acceptance of responsibility even though the prosecutor, having done so, also presented evidence that the defendant had encouraged the victim to lie about the offense).

ommendation.[7] Therefore, the State's request regarding gang conditions did not draw the trial court's attention to anything it was not already aware of from reading the PSI.

## B. Family Support

¶ 30 The prosecutor's statements regarding her concerns with Shaffer's family were made in the context of discussing Shaffer's probation and in response to defense counsel's comments regarding the ability of the family to support Shaffer. Additionally, this discussion immediately followed the prosecutor's express statement that she was "still going to stick with [her] recommendation." Under these circumstances, we cannot say that the discussion undercut the State's commitment to its sentencing recommendation.

## C. Victim Statement

¶ 31 Shaffer next contends that the prosecutor violated the plea agreement by presenting the victim's statement to the court. We disagree. Utah Code section 77–38–4(1)(b) gives the victim of a crime the right to be heard at sentencing proceedings. *See* Utah Code Ann. § 77–38–4(1)(b) (2008). Furthermore, the Utah Supreme Court has held that prosecutors have the responsibility "to assist victims in exercising their rights." *State v. Casey*, 2002 UT 29, ¶¶ 23–24, 29, 44 P.3d 756 (internal quotation marks omitted).[8]

¶ 32 Here, the trial court asked the prosecutor, "And the complaining witness is not here, Counsel[,] to speak?" In response to the trial court's inquiry, the prosecutor indicated that the victim was not present and then conveyed the victim's opinion that Shaffer "should be incarcerated for as long as

possible." In that same response, the prosecutor also indicated that the victim "was fine with the resolution" arrived at by the plea agreement. This statement was not improper. *Cf. State v. Rardon*, 2005 MT 129, ¶¶ 21–22, 327 Mont. 228, ¶¶ 21–22, 115 P.3d 182, ¶¶ 21–22 (holding that a prosecutor does not breach a plea agreement to recommend a particular sentence by eliciting testimony from a victim or witness so long as the prosecutor does not employ questioning intended to elicit inflammatory testimony in opposition to the state's recommendation). By repeating the victim's statement, the prosecutor did not undermine the State's recommendation or imply that the State regretted that recommendation. Rather, the prosecutor accurately answered the trial court's inquiry, while also volunteering that the victim did not object to the sentence recommended by the State. Thus, we are not persuaded that the prosecutor breached the plea agreement by fulfilling her obligation to the trial court and to the victim.

## D. "At Minimum" Language

¶ 33 Although we are most concerned with the prosecutor's qualification of her sentencing recommendation with the phrase "at minimum," Shaffer cannot establish either plain error or ineffective assistance of counsel with respect to this issue. First, we are not convinced that the comment impermissibly undermined the plea agreement. And even if it was a breach, that breach was not obvious. This single phrase, which followed on the heels of the prosecutor's express recommendation of the agreed upon sentence and her reiteration that she intended to "stick with [her] recommendation," was not sufficient to lead the court to

---

7. The PSI indicates, "The areas of greatest concern for [AP & P] are the defendant's alcohol and drug use, *his companions,* and his attitude." (Emphasis added.) The PSI further observed, "The defendant was with two of his friends when he committed the present offense. He claimed his friends were affiliated with a gang, but denied his own involvement.... The original charges for this case included gang enhancements for all persons involved."

8. Shaffer argues that our supreme court's recent holding in *State v. Ott*, 2010 UT 1, 647 Utah Adv. Rep. 19, —— P.3d ——, prohibits victims from

expressing their opinions regarding the appropriate sentence for a defendant. However, that holding prohibits such statements only in the context of capital sentencing hearings, *see id.* ¶¶ 25–26, which are also distinguished from non-capital sentencing hearings in imposing general limitations on the right of victims to be heard, *compare* Utah Code Ann. § 77–38–4(1)(b) (2008) (giving victims the right to be heard at criminal sentencing hearings), *with id.* § 77–38–4(2)(a) (denying victims the right to be heard at criminal sentencing hearings in capital cases unless called as a witness).

believe that the State had any reservations concerning its recommendation. Indeed, the statement was made during the prosecutor's explanation about why gang conditions should be imposed during probation and enforced with "zero tolerance." Furthermore, the prosecutor followed that discussion with her response to the trial court's inquiry about the victim, during which she emphasized that the victim was fine with the plea agreement. In the context of the entire hearing, the "at minimum" statement did not undermine the recommendation so as to constitute a plain breach of the plea agreement.

¶ 34 Additionally, given the minimal impact of the statement on the sentencing hearing as a whole and the fact that it was made in the context of the prosecutor's discussion of probation conditions, defense counsel did not perform deficiently in failing to object. Viewed in context, it is clear that the State's overall posture was one of support for the sentence it recommended to the trial court.

¶ 35 Finally, the trial court's complete rejection of the State's sentencing recommendation in favor of a prison term as recommended by AP & P convinces us that the prosecutor's statement did not prejudicially impact Shaffer. Consequently, Shaffer fails to establish plain error or ineffective assistance of counsel with respect to this statement.

## CONCLUSION

¶ 36 Even if the prosecutor's asking for the modified sentence was a breach of the plea agreement, it was invited error due to defense counsel's affirmative endorsement of the modified sentencing recommendation. Likewise, the modified sentence cannot support an ineffective assistance of counsel claim because Shaffer was not prejudiced by it. Additionally, there is no evidence to support Shaffer's contention that the State never communicated its recommendation to AP & P. Finally, none of the prosecutor's statements challenged by Shaffer, when examined in the context of the entire hearing, justify

reversal due to plain error or ineffective assistance of counsel.

¶ 37 Affirmed.

¶ 38 WE CONCUR: JAMES Z. DAVIS, Presiding Judge and GREGORY K. ORME, Judge.