2024 UT App 40

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
BENJAMIN LEE HEWARD,
Appellant.

Opinion
No. 20221055-CA
Filed March 28, 2024

Fourth District Court, Provo Department
The Honorable Robert A. Lund
No. 201400462

Scott F. Garrett and Jessica Griffin Anderson,
Attorneys for Appellant

Sean D. Reyes and Andrew F. Peterson,
Attorneys for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and RYAN M. HARRIS
concurred.

MORTENSEN, Judge:

¶1 Benjamin Lee Heward pled guilty to two charges of aggravated sexual abuse of his two minor daughters. As part of his plea agreement, the State and the victims promised to "affirmatively recommend" a prison sentence of two concurrent terms of six years to life. At sentencing, the prosecutor argued against probation and recommended a sentence of six years to life, but the two victims testified they were having second thoughts about the arguably lenient sentence, a change that the prosecutor attempted to explain. Ultimately, the court followed the recommendation of Adult Probation and Parole (AP&P), sentencing Heward to fifteen years to life on each count, with the

sentences to run concurrently. Heward now maintains that the prosecutor breached the plea agreement when he made statements about probation and the feelings of the victims, and he asserts that the district court should have acted sua sponte to remedy the situation. Heward also asserts that his attorney rendered ineffective assistance in failing to object to the prosecutor's comments. We reject Heward's claims of error and therefore affirm.

## BACKGROUND

¶2      Heward was charged with ten counts of aggravated sexual abuse of a child and one count of rape of a child for the admitted abuse he inflicted on his two minor daughters over a number of years. Heward pled guilty to two of the aggravated sexual abuse charges: (1) rubbing his clothed genitals over the clothed genitals of his older daughter in an act of simulated sexual intercourse and (2) rubbing his younger daughter's genitals skin to skin with his hand.

¶3      As part of the plea, the State agreed to dismiss the rape charge and the other eight aggravated sexual abuse charges. In addition, the plea agreement indicated that the "State and the victims" would "affirmatively recommend" a prison sentence of six years to life and lifetime sex-offender registration. In contrast, AP&P recommended that Heward be sentenced to fifteen years to life on each count.[1]

---

1. For context, a court imposing a sentence for aggravated sexual abuse of a child may deviate downward from the presumptive upper range of fifteen years to life if the "court finds that a lesser term . . . is in the interests of justice." *See* Utah Code § 76-5-404.3(4). The available lesser terms are ten years to life and six years to life. *See id.*

¶4     At sentencing, the prosecutor stated, "I know that based on
. . . Heward's statement and the recommendation from his sex
offender treatment therapist he's going to be asking for
probation." The prosecutor acknowledged there was a "very, very
narrow exception" to the mandatory imprisonment required for
aggravated sexual abuse of a child. *See* Utah Code § 76-5-404.3(7)
(stating that imprisonment is mandatory). That exception allows
a court to "suspend execution of sentence and consider probation
to a residential sexual abuse treatment center only if," along with
numerous other conditions, the perpetrator's offense "did not
cause the child victim severe psychological harm." *Id.* § 76-5-
406.5(1)(b). To this point, the prosecutor argued,

> Heward needs to show it's in the best interest of the
> public and specifically the child victims that the
> Court should sentence him to probation instead. He
> can't show that, Judge. He needs to show that these
> offenses did not cause the child victim severe
> psychological harm. He cannot show that, Judge.
> It's clear based on the victim impact statements
> from both [of Heward's daughters] that they are
> suffering severe psychological harm, continued
> psychological harm for what their father did to
> them.

¶5     The prosecutor then emphasized that Heward's abuse
would make it "extremely difficult" for his victims to have a
"sense of peace" and that they were "going to be affected" for "the
rest of their lives" because Heward "used them as sexual objects."
The prosecutor also pointed out that certain sex offenses
involving children in Heward's juvenile record indicated that he
represented a danger to the community. The prosecutor
concluded by saying, "He's going to tell the Court right now that
he should be granted probation because he's not a threat to the
community. The Court should disregard that."

¶6      The prosecutor then gave Heward's victims time to speak. The older daughter stated that Heward's abuse had a "devastating impact" on her life, that she was "still suffering from his actions," and that she was "always having to look over [her] shoulder making sure he's not around" her. This daughter, after recounting the "painful memories" and her continuing trauma, stated that Heward was "being shown undue mercy . . . with a plea agreement." She also noted that Heward had violated protective orders "[a]gain and again" and even at the sentencing hearing, he had "force[d]" and "manipulated" her and her sister "into an embrace with him."

¶7      The younger daughter also spoke. She said that as a result of the abuse, she struggled with depression and anxiety. She shared that she continued to "feel uncomfortable leaving [her] room" because she was afraid that she would "get raped and sexually assaulted again." She further revealed that whenever someone touches her "unexpectedly," she is "startled" and "can physically feel it all happening again."

¶8      After Heward's victims finished speaking, the prosecutor expressed that he wanted "to talk about what the State's recommendation [was] going to be." He explained that "[i]n speaking with the victims through plea negotiations," their "minimums were 6 to life" and "lifetime sex offender" registration. Then the following exchange took place:

> *Prosecutor*: I spoke with [the victims] this morning, if they still feel the same way, understanding that I'm bound to the recommendation of 6 to life, that I thought it was important for the Court to know where the victims stand today. I asked them how they still felt about the 6 to life. They told me—
>
> *Court*: May I say, . . . you bound yourself to 6 to life?

> *Prosecutor*: Yes, sir, that is the State's recommendation.
>
> *Court*: Okay, . . . you need to be very careful you don't say anything now that could be you trying to argue against that deal. So be circumspect in your comments.
>
> *Prosecutor*: Judge, I'm not arguing that it should be anything else. I think the Court should be fully informed about where the victims are. The victims aren't party to this agreement, but victims do have a right to be heard, and that can be through their own statements or through that of the prosecutor. They felt like they were manipulated by the defendant to feel sorry for him, and the Court did hear those statements today. They felt manipulated, and that's why they wanted 6 to life. That's the reason for the plea offer that was given, Judge. The State is still bound and still recommending 6 to life.

¶9  Heward's attorney (Counsel) then spoke about mitigating factors that the court should consider in sentencing. Counsel agreed with the State that Heward "probably [was] not qualified" for the "statutory exception that allows for probation." Counsel then concluded, "We would concur with the recommendation of the two concurrent 6 years. That's what we've all agreed to, and that's what I'd recommend."

¶10  Other witnesses, including Heward's mother and his therapist, spoke about various mitigating factors. And Heward himself spoke, stating that he was "not asking for probation."

¶11  The court was not persuaded by the recitation of mitigating factors:

[I]t evidences a higher level of depravity when the victims are your biological children, and this conduct went on for years. . . . [T]hat's also an aggravating circumstance. It's an aggravating circumstance that you violated the protective order.

Frankly, based on the information that's before me, it seems to me that you've minimized the conduct that you've been involved in. I'd be more inclined to accept the versions that [your daughters] provide in terms of what happened.

Based on all of that, I'm going to follow the AP&P recommendation. I don't think that I have the discretion to sentence you to less than 15 years in prison. That's the sentence of the Court. You'll be sentenced to [two concurrent terms] of 15 years to life in the Utah State Prison.

¶12    Heward appeals.


ISSUES AND STANDARDS OF REVIEW

¶13    Heward first argues that the "prosecutor breached the plea agreement by failing to affirmatively recommend a prison sentence of six years to life and by implying the State regretted entering into the plea agreement." Heward acknowledges that this claim was not preserved and asks that it be reviewed under both plain error and ineffective assistance of counsel. *See State v. Shaffer*, 2010 UT App 240, ¶ 9, 239 P.3d 285 (recognizing that an unpreserved alleged breach may be reviewed for plain error and ineffective assistance of counsel). To demonstrate plain error, Heward "must show that: (i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) absent the error, there is a reasonable likelihood of a more favorable outcome." *State v. Samul*, 2018 UT App 177, ¶ 10, 436 P.3d 298 (cleaned up),

*cert. denied*, 432 P.3d 1233 (Utah 2018). And "when a claim of ineffective assistance of counsel is raised for the first time on appeal, there is no lower court ruling to review and we must decide whether the defendant was deprived of the effective assistance of counsel as a matter of law." *Id.* ¶ 11 (cleaned up).

ANALYSIS

I. Plain Error

¶14 Heward complains that the prosecutor breached the plea agreement in two separate but related ways. First, Heward argues that the prosecutor failed to "affirmatively recommend" the prison sentence of six years to life as indicated in the plea agreement. Second, Heward argues that the prosecutor then "compounded" the breach by bringing up the victims' apparent change of heart about the plea agreement, implying that the State regretted entering the plea agreement. And Heward asserts that the district court "should have been aware of the errors the prosecutor made." In such cases, our court has focused on whether a prosecutor's statements were egregious enough to require a district court to act sua sponte to remedy the situation. *See State v. Hummel*, 2017 UT 19, ¶ 119, 393 P.3d 314 ("[N]one of [the prosecutor's] statements was so egregiously false or misleading that the judge had an obligation to intervene by raising an objection *sua sponte*."); *State v. Hosman*, 2021 UT App 103, ¶ 38, 496 P.3d 1162 (questioning whether a prosecutor's statements were so egregious that it constituted plain error for the court to fail to intervene sua sponte to remedy the harm), *cert. denied*, 502 P.3d 270 (Utah 2021).

¶15 To succeed on this claim, Heward "must prove that the State actually breached the plea agreement, that the breach should have been obvious to the district court, and that had the district court recognized and remedied the breach, there is a reasonable likelihood that [his] sentence would have been more favorable."

*State v. Gray*, 2016 UT App 87, ¶ 15, 372 P.3d 715, *cert. denied*, 379 P.3d 1185 (Utah 2016). And "if any one of these requirements is not met, plain error is not established." *Id.* (cleaned up).

¶16    "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971); *accord State v. Lindsey*, 2014 UT App 288, ¶ 16, 340 P.3d 176. Accordingly, a "plea agreement is breached when the State fails to act in accord with its promise." *State v. Samulski*, 2016 UT App 226, ¶ 13, 387 P.3d 595, *cert. denied*, 390 P.3d 725 (Utah 2017). However, "when a defendant alleges that the State violated a plea agreement by making inappropriate statements at sentencing, as [Heward] does here, we consider the prosecutor's statements in the context of the entire hearing." *Gray*, 2016 UT App 87, ¶ 16 (cleaned up).

1.    Affirmative Recommendation

¶17    Heward argues that the prosecutor failed to "affirmatively recommend" the prison sentence of six years to life agreed to in the plea. The gist of Heward's argument is that "[i]n order to affirmatively recommend a sentence of six years to life, the prosecutor was required to make an effort to position the recommendation as one that is 'in the interests of justice.'" (Quoting Utah Code § 76-5-404.3(4)(b).) Heward asserts that, instead, the prosecutor "utterly failed to make an argument or present the judge with any information that a sentence of six years to life was in the interests of justice." Heward complains that the prosecutor "focused solely" on the limited discretion of the judge, certain aggravating factors (namely, the psychological harm suffered by the victims, Heward's juvenile record, and Heward's alleged violation of a protective order), and the victims' alleged withdrawal of support for the plea agreement. "By emphasizing only aggravating factors in his argument," Heward asserts, "the prosecutor failed to affirmatively recommend a sentence of six years to life," resulting in "a clear breach." We are not persuaded

that any breach, let alone a clear one, occurred when the prosecutor highlighted these factors.

¶18    First, the prosecutor's statements about aggravating factors were made not in reference to the plea agreement but in the context of arguing that Heward should not be offered probation under the limited statutory exception to mandatory imprisonment. By pointing to the severe psychological harm inflicted on the victims and Heward's juvenile record, the prosecutor was explicitly arguing that Heward was not eligible for probation under the statute. And Heward's violation of the protective order was also mentioned in the context of denying probation—specifically that Heward should start serving his sentence immediately. As the State points out, the prosecutor's remarks about the protective order violations "weren't about *what* Heward's sentence should be, but *when* he should begin to serve it." Arguing against probation and for immediate incarceration— even if it necessarily required the prosecutor to reference some aggravating factors relevant to other aspects of Heward's sentencing—was consistent with the State's recommendation of six years to life. After all, the plea agreement made it perfectly clear that the State would "affirmatively recommend" a *prison term*, a recommendation that obviously entitled the prosecutor to argue—even forcefully—against probation by highlighting specific reasons Heward did not qualify for probation.

¶19    Second, and more to the point, an "affirmative recommendation" does not require any particular measure of enthusiasm for an agreed-upon sentencing recommendation. While a prosecutor may not "undermine" a promised sentencing recommendation by expressing "personal reservations at the sentencing hearing," the "prosecutor has no responsibility to make such recommendations enthusiastically." *State v. Shaffer*, 2010 UT App 240, ¶ 26, 239 P.3d 285 (cleaned up); *see also Gray*, 2016 UT App 87, ¶ 18 ("[The prosecutor] described the circumstances of the crimes to underscore [the absence of mitigating factors], and at the conclusion of this discussion, he

accurately, if not enthusiastically, described the recommendation the State had agreed to make for concurrent sentences . . . . [This] context supported a reasonable interpretation that comported with . . . the State's obligations under the plea agreement.").

¶20 Notably, the plea agreement does not contain any provisions regarding how the State was to fulfill its promise to "affirmatively recommend" the six-years-to-life sentence. It offers no guidance on how enthusiastically or forcefully the prosecutor had to argue in favor of the agreement. Nor does it indicate, as Heward argues on appeal that it should, any kind of obligation on the part of the prosecutor to highlight mitigating factors. And while it is true that the prosecutor did not approach the recommendation with gusto, it is even more clear that the prosecutor did affirmatively recommend the agreed-upon sentence two distinct times. The prosecutor explicitly declared that six years to life "is the State's *recommendation*." (Emphasis added.) And when cautioned by the court to "be circumspect" in his comments to avoid saying "anything" that "could be . . . trying to argue against that deal," the prosecutor clarified that he was "not arguing that it should be anything else" and that the "State is still bound and still *recommending* 6 to life." (Emphasis added.)

¶21 Moreover, these recommendations were "affirmative" in that the prosecutor did more than merely submit the matter without any argument against the defense's recommendation; to the contrary, the State expressed its affirmative assent to the prison term agreed upon in the plea agreement. *See State v. Samul*, 2018 UT App 177, ¶¶ 13–17, 436 P.3d 298 (distinguishing between situations in which a plea agreement merely "secured the State's promise not to oppose" the defense's recommendation and situations in which a plea agreement requires the State to "affirmatively argue for" a particular sentence), *cert. denied*, 432 P.3d 1233 (Utah 2018). In this case, the prosecutor made an effort to positively express the State's assent to the term of six years to life by declaring that the term "*is* the State's *recommendation*."

(Emphasis added.) That the assent was expressed without great enthusiasm does not diminish that it was in the affirmative.

¶22 Thus, the prosecutor's statements, especially when taken as a whole, represent a consistently unambiguous affirmation at sentencing that the State stood behind its recommendation of six years to life. We perceive no breach of the plea agreement in the manner in which the prosecutor recommended a six-years-to-life prison sentence.

2. Implication of Regret

¶23 Heward next argues that in informing the court that the two victims apparently no longer supported the sentence of six years to life, the State breached the plea agreement by implying that it regretted entering it.

¶24 A prosecutor who "promises to recommend a certain sentence and does so" does not breach the bargain "by also bringing all relevant facts to the attention of the court, so long as the statements are neutral and do not imply that the information makes the State regret entering into the plea agreement." *Shaffer*, 2010 UT App 240, ¶ 26 (cleaned up). The feelings of victims do not inherently reflect the position of the State, and victims are not authorized to communicate the State's recommendations. Therefore, by sharing the victims' feelings, the prosecutor was making a neutral statement, one that did not reflect the State's position or recommendation. *See id.* ¶ 32 ("By repeating the victim's statement, the prosecutor did not undermine the State's recommendation or imply that the State regretted that recommendation."). Thus, bringing to the court's attention that the support of Heward's victims for the plea agreement had perhaps waned does not imply that the State regretted entering the plea.

¶25 It is also important to note that the prosecutor made these comments immediately after Heward's victims made statements

that could admittedly cut against the sentence of six years to life. The older daughter seemed to explicitly oppose the plea agreement, saying that Heward was "being shown undue mercy . . . with a plea agreement." And the younger daughter, while not overtly criticizing the plea agreement, described in detail how Heward's abuse caused her to feel "numb," depressed, anxious, "suicidal," "unclean and dirty," and untrusting. She further stated that she continued to have "very vivid nightmares and flashbacks" in which she could "physically feel his hands" on her. She also said, "I will never be able to forget how it felt when . . . Heward did the things he did to me. I'm afraid that wherever I go I will see him and he will hurt me in some type of way." And she concluded by saying, "I want . . . Heward to learn from his actions, and I want him to know how badly he affected me . . . ." Given the graphic descriptions both victims provided of the ongoing harm they suffered, it certainly would not be a stretch to conclude that the victims thought Heward was being treated too leniently by the terms of the plea agreement.[2]

¶26 It was against this backdrop that the prosecutor spoke. As the State points out, the victims' apparent "about-face on the plea agreement demanded an explanation" because the "court may have been confused by the disparity between the victims' statements at sentencing and the plea agreement." After all, the plea agreement stated that the "State and victims will affirmatively recommend" a sentence of six years to life. But after the victims spoke, the court could have easily concluded that the victims were no longer on board. It is in this milieu that the

---

2. In his reply brief, Heward explicitly states that he "does not object to the prosecutor facilitating the victims' statements to the trial court." Moreover, Heward does not claim in any way that the victims speaking up against the low-range sentence was a breach of the plea agreement, even where the plea agreement stated the *victims* would "affirmatively recommend" a sentence of six years to life along with the State.

prosecutor assured the court that in "speaking with the victims through plea negotiations," their "minimums were 6 to life" and "lifetime sex offender registry" and that was the offer the State gave Heward. Then the prosecutor explained that the victims had "wanted 6 to life" because "they felt manipulated" by Heward. We have made clear that a prosecutor conveying the views of the victim does not "undermine" or breach a plea agreement. Here, if anything, the prosecutor's statements about how the victims felt represented an attempt to salvage the plea agreement after the victims' statements could be taken as militating against it. And it was well within the prosecutor's duty to assist the victims in making their views known. *See State v. Casey*, 2002 UT 29, ¶ 29, 44 P.3d 756 ("Prosecutors must assist victims in exercising their right to be heard at plea hearings and provide them with clear explanations regarding such proceedings." (cleaned up)). The prosecutor appeared to be making the best of a delicate situation by juggling the interests of the various parties involved while trying to also honor the promises made in the plea agreement.

¶27　In sum, Heward's complaint of plain error fails because the prosecutor did not breach the plea agreement at all, let alone commit a breach so obvious as to require the district court to intervene without an objection.

## II. Ineffective Assistance

¶28　Heward argues that Counsel provided ineffective assistance by failing to object to the prosecutor's alleged breach of the plea agreement.

¶29　To show ineffective assistance of counsel, Heward must prove that Counsel performed deficiently and that he suffered prejudice as a result. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Because failure to establish either prong of the test is fatal to an ineffective assistance of counsel claim, we are free to address [Heward's claim] under either prong." *Honie v. State*, 2014 UT 19, ¶ 31, 342 P.3d 182. Since we conclude, for two reasons, that

Counsel did not perform deficiently, we limit our analysis to the deficiency prong. We give "trial counsel wide latitude in making tactical decisions and will not question such decisions unless there is no reasonable basis supporting them." *State v. Heyen*, 2020 UT App 147, ¶ 18, 477 P.3d 23 (cleaned up), *cert. denied*, 485 P.3d 943 (Utah 2021). So, to prevail on *Strickland*'s first prong, Heward "must overcome the strong presumption that trial counsel rendered adequate assistance and exercised reasonable professional judgment by persuading the court that there was no conceivable tactical basis for counsel's actions." *State v. Samul*, 2018 UT App 177, ¶ 15, 436 P.3d 298 (cleaned up), *cert. denied*, 432 P.3d 1233 (Utah 2018).

¶30 First, any objection would have been unlikely to succeed because, as we have explained above, it was far from clear that the prosecutor breached the plea agreement. *See State v. Burdick*, 2014 UT App 34, ¶ 34, 320 P.3d 55 ("It is well settled that counsel's performance at trial is not deficient if counsel refrains from making futile objections, motions, or requests." (cleaned up)), *cert. denied*, 329 P.3d 36 (Utah 2014). Under these circumstances, a reasonable attorney could have concluded that the prosecutor had made the required "affirmative recommendation" and had therefore not breached the plea agreement at all. *See Samul*, 2018 UT App 177, ¶ 16 ("Here, we can easily conceive of a reasoned basis for counsel's decision not to object to the State's remarks at sentencing: counsel may have believed that the State was accurately describing the terms of the plea agreement.").

¶31 Second, even if we assume, for purposes of the discussion, that Counsel actually believed, in the moment, that the prosecutor's sentencing remarks constituted a breach of the plea agreement, Counsel nevertheless had a solid strategic reason not to object to the prosecutor's statements, namely, an objection could jeopardize the plea agreement and he very much wanted it to remain on the table owing to the favorable terms it offered Heward. Through the plea agreement, Heward would serve time for only two of his eleven charges—ten counts of aggravated

sexual abuse of a child and one count of rape of a child. If Counsel had been successful in objecting that the prosecutor breached the plea agreement, one of two results would have likely happened. At its discretion, the district court could have ordered "either specific performance of the plea agreement or withdrawal of the guilty plea." *State v. Smit*, 2004 UT App 222, ¶ 17, 95 P.3d 1203. If the court had ordered specific performance, the State would then have to reiterate that it was honoring the promises made in the plea agreement. But it would have been more likely (had a breach occurred) that the court would have allowed Heward to withdraw his plea—something he would be reluctant to do since the probability of getting an equally favorable offer later would be slim in light of the victims' apparent reservations about the existing plea agreement. Competent counsel could easily conclude that the risk of objecting was simply too great considering the minimal benefit and likely downside. At the very least, competent counsel could have reasoned that there was no benefit in objecting because the existing agreement was the best Heward was going to receive. So, Counsel's best course of action was to express Heward's concurrence with the six-years-to-life sentence and hope that the court would agree.

¶32   Accordingly, Heward's ineffective assistance claim fails because Counsel had sound strategic reasons for not lodging an objection to the prosecutor's statements at sentencing.


CONCLUSION

¶33   Heward fails to establish that the district court plainly erred where he has not shown that the plea agreement was breached, much less obviously so. He has also failed to show that Counsel provided ineffective assistance in not objecting to the prosecutor's statements.

¶34   Affirmed.

————————