**2018 UT App 154**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
ANTHONY CORONA,
Appellant.

Opinion
No. 20140321-CA
Filed August 16, 2018

Third District Court, Salt Lake Department
The Honorable Vernice S. Trease
No. 111909780

Debra M. Nelson, Attorney for Appellant

Sean D. Reyes and Jeffrey S. Gray, Attorneys
for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES GREGORY K. ORME and JILL M. POHLMAN concurred.

MORTENSEN, Judge:

¶1     Early one morning, Anthony Corona fired five rounds
from a .22 caliber handgun during a staged drug deal in a church
parking lot. Four rounds struck Victim in his chest and arm, one
of which killed him. Corona and his accomplices, who planned
to rob Victim all along, fled, leaving Corona's cell phone at the
murder scene. A jury convicted Corona of aggravated murder,
aggravated robbery, possession of a firearm by a restricted
person, and five counts of felony discharge of a firearm, all
despite testimony from Witness that she pulled the trigger, not
Corona. Corona challenges his convictions on four grounds: (1)
that the trial court erroneously allowed the prosecution to
present evidence of a prior shooting; (2) that trial counsel was
ineffective for not moving to suppress evidence discovered from

Corona's cell phone; (3) that Utah's aggravated murder statute is unconstitutionally disproportionate as applied; and (4) that his trial counsel was ineffective for failing to argue that Corona's convictions for discharge of a firearm should merge with his aggravated murder conviction. We affirm.

BACKGROUND

¶2     A group consisting of Corona's codefendants decided to rob Victim, a drug dealer. The group arranged to meet Victim early one morning in a church parking lot under the guise of a drug deal. Concerned that Victim would be armed and having no firearm of their own, the group enlisted Corona, who had a gun. Corona agreed to assist in the robbery and accompanied the group, all in a single car, to the church parking lot. Corona and another codefendant remained in the car while the other codefendants hid behind a nearby shed. There they waited for Victim to arrive.

¶3     Witness drove Victim to the church parking lot. Victim exited his SUV and moved into the backseat of the car, where Corona and another codefendant waited. The group converged on Victim and a struggle ensued. Corona exited the car, drew his gun, and pointed it at Victim. As the struggle continued, Corona fired several shots at Victim. One shot proved fatal.

¶4     Corona fled on foot. As he fled, Witness told the other codefendants to get in the SUV. Witness drove out of the parking lot with the codefendants, picking up Corona on the way.

¶5     The police soon arrived and secured the scene. The police found Victim slumped over in the back seat of the still-running car, which the police traced to one of the codefendants. They also found Corona's cell phone on the front passenger seat of the car and Victim's cell phone on the floor in the backseat. The police requested a warrant, stating in the supporting affidavit, "By looking in this phone your affiant and assisting investigators hope to identify the victim, suspect or suspects." A warrant was

issued that authorized police to "make a search of the above-named or described premises for the . . . described property or evidence and if [the police found] the same or any part thereof, to . . . retain such property in [police] custody, subject to the order of this court." The police seized and searched the cell phones, which revealed the identities of the phones' owners as well as calls between the two phones in the minutes leading up to the murder.

¶6 The police also recovered fingerprints belonging to some of the codefendants, but none belonging to Corona. Five bullet casings and four bullets were also recovered. A ballistics analysis revealed that the five casings were fired from the same firearm and that the bullets were fired from the same firearm. But because the gun was not recovered, ballistics analysis could not determine whether the shell casings and bullets were fired from the same gun.

¶7 Based on the evidence collected at the scene, the police arrested Corona and the codefendants. All of the codefendants denied involvement at first, but they later admitted involvement and identified Corona as the shooter. The codefendants agreed to testify against Corona in exchange for guilty pleas to reduced charges. The codefendants' identification of the shooter was corroborated by Corona's girlfriend (Girlfriend). Girlfriend initially provided an alibi for Corona, saying that she and Corona were both home at the time of the murder. But, in a follow-up interview seven months later, she told police that Corona had left on the morning of the murder with one of the codefendants and told Girlfriend that he was going to help rob someone and he was taking his gun. Girlfriend further told police that when Corona returned he admitted to shooting Victim and that Corona was upset about having left his cell phone at the murder scene. While she attempted later to distance herself from these statements and go back to her original story that Corona had stayed home, Corona's and Girlfriend's cell phone records showed multiple calls and texts to each other near the time of the murder.

¶8     Girlfriend's second interview also provided investigators with a lead that eventually connected Corona to the murder. Girlfriend made statements to police, which she later recanted, that Corona fired a gun during a different altercation in an AutoZone parking lot. Ballistics analysis showed that the bullet casings recovered at this prior shooting were fired from the same gun as the one used against Victim. Shortly before trial in April 2013, the State filed notice of its intent to introduce rule 404(b) evidence of the AutoZone shooting. The notice included a police report of that shooting. On Corona's motion, the court continued the trial so that the admissibility of this evidence could be fully briefed and analyzed under rule 404(b) of the Utah Rules of Evidence. The court eventually excluded the evidence of the prior shooting, reasoning that the evidence relied "almost entirely" on Girlfriend's inconsistent statements. But the court allowed reconsideration of its decision should "the State develop additional evidence regarding the identity of the shooter . . . or the door is opened by [Corona]."

¶9     Four days before trial in January 2014, the State moved for reconsideration, claiming that it had developed additional evidence related to some car molding found at the scene of the AutoZone shooting matching a piece of molding missing from Corona's grandfather's car. The court gave the parties the option to continue the trial and address the rule 404(b) and suppression issues or to have the motions struck as untimely and proceed to trial. Corona agreed to proceed to trial and the court left its prior decision in place, subject to the defense opening the door.

¶10    During the defense's case at trial, Corona called Witness to testify. Witness had made statements to police after the murder that she was waiting in her car when Victim was shot. But at trial, Witness testified that she, not Corona, shot and killed Victim.[1] On cross-examination and over defense counsel's

---

1. At the time Witness testified, she was serving a prison sentence for obstructing justice, a first degree felony, and two

(continued…)

objection, the State questioned Witness about where she had obtained the gun. Witness explained that she received the gun from a friend, not Corona, but refused to identify the friend.

¶11    After Witness testified, the State argued that Witness had opened the door for admission of the evidence of the AutoZone shooting to be used to rebut her testimony. The court allowed the State to present the evidence of the AutoZone shooting, including evidence of the vehicle molding. Corona objected to the admissibility of the evidence and, although he had declined the earlier offer of a continuance before trial, now moved for a continuance, which the court denied.

¶12    The jury convicted Corona on all counts. Corona appeals.

ISSUES AND STANDARDS OF REVIEW

¶13    Corona brings four challenges on appeal. First, he contends that the trial court erred in admitting evidence of the prior shooting. A trial court's admission of other-acts evidence is reviewed for abuse of discretion. *State v. Thornton*, 2017 UT 9, ¶ 56, 391 P.3d 1016.

¶14    Second, Corona contends that his counsel "was ineffective in not pursuing suppression of unconstitutionally seized cellphone evidence." "When a claim of ineffective assistance of counsel is raised for the first time on appeal, there is no lower court ruling to review and we must decide whether the defendant was deprived of the effective assistance of counsel as

_____

(…continued)

prison sentences of one to five years. During her initial interview with police, Witness resisted giving any names and explained that she felt bad for everyone involved. Witness stated that she knew them all and that they were "like kids to her."

a matter of law." *State v. Reid*, 2018 UT App 146, ¶ 17 (cleaned up).

¶15    Third, Corona contends that Utah's aggravated murder statute was disproportionately applied. "The constitutionality of a statute is a question of law reviewed for correctness." *State v. Reece*, 2015 UT 45, ¶ 18, 349 P.3d 712.

¶16    Fourth, Corona contends that his convictions for discharge of a firearm merge with his conviction for aggravated murder and that his defense counsel was ineffective for not asserting such. Again, we decide a claim of ineffective assistance of counsel raised for the first time on appeal as a matter of law. *Reid*, 2018 UT App 146, ¶ 17.


ANALYSIS

I. Evidence of the Prior Shooting

¶17    Corona contends that the trial court erroneously admitted evidence of the AutoZone shooting in which he had been implicated. Corona argues four reasons why the evidence was improperly admitted: (1) the evidence "could not properly be used to impeach [Witness]" under rule 608 of the Utah Rules of Evidence; (2) the evidence "was not proper rebuttal evidence"; (3) the evidence violated rule 404(b) of the Utah Rules of Evidence in that it "was irrelevant, improper character evidence, and more prejudicial than probative"; and (4) "the State's motion to admit the 404(b) evidence was not timely and the denial of a continuance to prepare to meet this evidence [was] prejudicial." We examine these arguments in turn.

A.    Evidence of the AutoZone Shooting Was Properly Used to Impeach Witness

¶18    Corona argues that it was improper to use evidence of the AutoZone shooting to impeach Witness's statements that she was the shooter. Citing rule 608 of the Utah Rules of Evidence,

he asserts that "the admission of the [prior shooting] was improper because specific bad acts evidence alleged against the defendant cannot be used to attack another witness's credibility for truthfulness." We disagree and conclude that rule 608 does not apply in this instance.

¶19    Rule 608 of the Utah Rules of Evidence governs what evidence may be introduced to attack or support a witness's character for truthfulness or untruthfulness. The AutoZone shooting evidence is not an instance of conduct that attacks or supports Witness's character for truthfulness or untruthfulness; rather, it is substantive evidence that rebuts Witness's testimony that she shot Victim. "[O]nce the defendant offers evidence or makes an assertion as to any fact, the State may cross-examine or introduce on rebuttal any testimony or evidence which would tend to contradict, explain or cast doubt upon the credibility of [that evidence]." *See State v. Thompson*, 2014 UT App 14, ¶ 30, 318 P.3d 1221 (cleaned up). Accordingly, once defense counsel presented testimony that Witness, not Corona, had the gun, the State could properly use extrinsic evidence to prove that this assertion was arguably, and in the State's view demonstrably, false. The evidence did not address Witness's character for truthfulness or any other character trait. Instead, the evidence presented here provided a basis for the fact finder to conclude that Corona possessed and used the same gun weeks before Victim's murder, contradicting Witness's testimony.

¶20    In *Thompson*, a sixteen-year-old girl alleged that Thompson had forcibly engaged in sexual acts with her on a specific date between 9:00 and 9:30 a.m. *Id.* ¶¶ 2–3. Both Thompson and a friend testified that on that date, Thompson was driving a long-haul truck and that they were together on the road by 6:30 a.m. *Id.* ¶¶ 4–5. Additionally, Thompson put driving logs into evidence to support the testimony. *Id.* ¶¶ 8–9. The State then offered extrinsic evidence, in the form of testimony of a transportation specialist, to challenge the accuracy of the driving logs. *Id.* ¶ 11. The transportation specialist presented a computer generated report purporting to prove that the log entries, specifically the distance travelled in

the time reported, was "not physically possible." *Id.* On appeal, Thompson claimed ineffective assistance of counsel, arguing that counsel should have objected to the transportation specialist evidence under rules 404, 405, and 608. *Id.* ¶ 22. This court rejected the claim, holding, among other things, that rule 608 did not apply. *Id.* ¶¶ 29–31. This court stated,

> [r]ule 608 of the Utah Rules of Evidence expressly incorporates [the limitation on character evidence], stating that extrinsic evidence of specific conduct is not admissible to attack or support a witness's *character for truthfulness*. *See* Utah R. Evid. 608(b). But this limitation does not apply to evidence used to directly rebut a witness's testimony or other evidence.

*Thompson*, 2014 UT App 14, ¶ 29.

¶21 We reach a similar conclusion here. Because the evidence of the AutoZone shooting directly rebuts Witness's testimony and does not go to Witness's general character for truthfulness, it is not the type of evidence contemplated under rule 608. *See State v. Green*, 578 P.2d 512, 514 (Utah 1978) (explaining that witness testimony is subject to "cross-examination on any matter which would tend to contradict, explain or cast doubt upon the credibility of [that] testimony," and that "testimony or evidence which is purposed to those same objectives may be introduced in rebuttal"); *State v. Reed*, 820 P.2d 479, 482 (Utah Ct. App. 1991) (same). We therefore reject Corona's argument.

B. Evidence of the AutoZone Shooting Was Proper Rebuttal Evidence

¶22 Corona argues that "when impeaching a witness with 404(b) evidence, it is axiomatic that the prior bad acts alleged are against the testifying witness, not another person." We do not share this view. As explained above, such an axiom may be true when uncharged conduct is used to support or attack that

witness's *character for truthfulness*, but not when the prior bad act is used to contradict the witness's *testimony*. Corona points to no authority adopting the argument he asserts.[2]

¶23 Instead, "once the defendant offers evidence or makes an assertion as to any fact, the State may cross-examine or introduce on rebuttal any testimony or evidence which would tend to contradict, explain or cast doubt upon the credibility of his testimony." *State v. Thompson*, 2014 UT App 14, ¶ 30, 318 P.3d 1221 (cleaned up). Corona presented evidence, through Witness, that Witness obtained the gun from a friend and used it to shoot Victim. The evidence of the AutoZone shooting contradicts and casts doubt upon the credibility of that testimony. We therefore conclude that the evidence of the AutoZone shooting was proper rebuttal evidence.

¶24 Corona also argues that the evidence was improperly admitted because the State, not Corona, opened the door for admission of the evidence on the cross-examination of Witness. Corona relies on *State v. Saunders*, 1999 UT 59, 992 P.2d 951, to support his argument. In *Saunders*, the Utah Supreme Court held that defense counsel did not open the door to certain evidence where the State had "already introduced a great deal" of related evidence and that defense counsel was "entitled, indeed required as a practical matter, to rebut or explain that evidence by [the defendant's] testimony." *Id.* ¶ 22. The facts here are inapposite. The first time any evidence was introduced that Witness had the gun and shot Victim was during Witness's testimony. The testimony was not used to explain evidence that was previously introduced; rather, it was entirely new. And the

---

2. The cases that Corona does cite do not stand for the proposition he asserts. Instead, they deal specifically with an impeachment exception that allows prosecutors to use illegally obtained evidence to impeach the credibility of defense witnesses. *See James v. Illinois*, 493 U.S. 307, 313–15 (1990); *Agnello v. United States*, 269 U.S. 20, 34–35 (1925).

State was entitled to respond to the evidence adduced by the defense. Thus, we reject Corona's argument that the State, not Corona, opened the door for rebuttal evidence.

C.    Evidence of the Prior Shooting Was Introduced for a Proper Noncharacter Purpose

¶25    Corona further argues against the admittance of the evidence of the prior shooting, claiming that "[t]he only purpose the evidence served was an improper and irrelevant one—to suggest that Corona was a dangerous person and was likely the shooter because he had been involved in another shooting." We disagree.

¶26    Rule 404(b) of the Utah Rules of Evidence allows evidence of prior bad acts to be admitted so long as it is offered for a noncharacter purpose "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Utah R. Evid. 404(b)(2). Our supreme court has articulated a three-part test for the admittance of rule 404(b) evidence: "the prior bad-act evidence (1) must be offered for a genuine, noncharacter purpose, (2) must be relevant to that noncharacter purpose, and (3) the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice." *State v. Reece*, 2015 UT 45, ¶ 57, 349 P.3d 712 (cleaned up). Our supreme court added that "matters of conditional relevance must also meet the preponderance of the evidence standard under rule 104(b)." *Id.* (cleaned up).

¶27    The trial court's analysis of the evidence sufficiently met these standards. First, the trial court concluded that evidence was admitted for a noncharacter purpose—identity. Second, the court concluded that the evidence was relevant to the identity of the shooter in this case. Third, the trial court concluded that the evidence should not be excluded under rule 403, which provides that a court "may exclude relevant evidence if its probative

value is substantially outweighed by a danger of . . . unfair prejudice."[3] Utah R. Evid. 403.

¶28    Indeed, the evidence goes to the identity of the shooter by showing who had possession of the murder weapon. The evidence contradicted Witness's testimony that she, not Corona, possessed the gun in the weeks prior to the altercation with Victim.[4] And, while conducting its rule 403 analysis, the trial court concluded that, in addition to the inconsistent testimony of

---

3. In analyzing the evidence under rule 403, the trial court relied on factors outlined in *State v. Shickles*, 760 P.2d 291 (Utah 1988), including whether the evidence would arouse the jury to "overmastering hostility." Since this case was tried, our supreme court has explained that "courts are bound by the text of rule 403," *State v. Cuttler*, 2015 UT 95, ¶ 18, 367 P.3d 981 (cleaned up), and that "[i]t is always error . . . for a court to center its analysis on the *Shickles* factors, to consider itself obligated to use a particular factor or factors, or to rely inflexibly upon each . . . factor," *State v. Ring*, 2018 UT 19, ¶ 23. The court has also explained that "it is inappropriate for a court to consider the overmastering hostility factor [articulated in *Shickles*] in a rule 403 analysis." *Cuttler*, 2015 UT 95, ¶ 20. However, because Corona has not argued for reversal on these bases, we have no occasion to review the trial court's analysis under those potential arguments.

4. We note that the trial court did not make a separate and independent conclusion that Corona's involvement was relevant under rule 104(b) of the Utah Rules of Evidence. However, Corona never raised that issue below. Instead, Corona framed the issue "under the purview of 404(b) and 403 and the *Shickles* factors." Because any 104(b) issues were not raised to the trial court, we reject Corona's rule 104(b) arguments on appeal as unpreserved.

Girlfriend that led to the investigation which matched the bullet casings from both shootings, the car molding evidence "added to the strength of the evidence." The trial court was also careful to limit the evidence of the prior shooting to facts relevant to the shooter's identity, expressly excluding "the injuries of the alleged victim." Under these facts, we cannot agree with Corona's challenge. *See State v. Clark*, 2014 UT App 56, ¶¶ 21, 26, 322 P.3d 761 (affirming the trial court's decision to allow evidence of a prior shooting to show identity where the same gun was used in both shootings).

D.    Disclosure of Rule 404(b) Evidence Was Not an Abuse of Discretion

¶29   Next, Corona asserts that the trial court abused its discretion when it denied his motion for a continuance mid-trial after the State sought to introduce the car molding evidence. The trial court found that the notice of the molding evidence was sufficient under rule 404(b) and the timing of the disclosure was justified by the State's late discovery and receipt of the report. The trial court ruled the notice reasonable because "it [was] not so prejudicial to the defendant that they couldn't have done what they needed to do before the trial" and "the State provided that information . . . as soon as the investigator was able to obtain [it]." Given the long-in-advance notice the State had provided as to the specific bad act at issue and the general nature of the evidence anticipated in the particular circumstances of this case, we cannot conclude that the trial court abused its discretion.

¶30   Rule 404(b) requires "reasonable notice of the general nature" of the bad-acts evidence the State intends to introduce, and the rule expressly provides that such notice may even be appropriate "during trial if the court excuses lack of pretrial notice on good cause shown." Utah R. Evid. 404(b)(2).

¶31   We see no abuse of discretion for three reasons. First, the State provided notice of the general nature of the evidence, including Girlfriend's testimony and the ballistics testing, well in

advance of the trial. This made Corona generally aware of the evidence and allowed him to prepare to challenge it. We further see no flaw as to the requirement to disclose the nature of the evidence the State intended to offer. Certainly, the notice provided in April 2013, which included a police report, gave notice of the specific bad act at issue and identified most of the evidence connected with the circumstances. Accordingly, Corona was on notice that the issue was likely to come up at trial.

¶32    Second, while the State did not identify the evidence matching the car molding until six days before trial, the State moved quickly to acquire the evidence once it became apparent how Witness would testify. After acquiring the evidence, the State produced it to Corona within one day. Moreover, the trial court's earlier ruling that excluded the bad-acts evidence was always conditioned on whether "the door is opened at trial for either impeachment or rebuttal purposes." The trial court later determined that the door had indeed been opened. The trial court's ruling to allow short notice of the molding evidence days before trial is warranted under the particular circumstances of this case because (1) the State gave notice within one day of receiving the report of the molding match and (2) Corona had previously been put on notice that the door could be opened for such evidence.

¶33    In this regard, it is of little import that the trial court first excluded the evidence and then reversed its pretrial determination. The trial court had already noted that its pretrial ruling was subject to what occurred at trial. When the court made its ruling, it was viewing the question of admissibility in light of what had actually taken place at trial, as opposed to any pretrial determination. In other words, the trial court viewed the evidentiary question in light of Witness testifying that she had possessed the murder weapon during the relevant time period.

¶34    Third, the court found that the disclosure several days before trial was not so late that Corona could not address it. While Corona has challenged this finding, he has not

demonstrated any concrete reason why he did not have time to prepare or adequately respond.

¶35 Under these circumstances, the trial court's determination was not so unreasonable as to constitute an abuse of discretion. Therefore, Corona's challenge fails.

## II. Cell Phone Evidence

¶36 Corona contends that his counsel "was ineffective in not pursuing suppression of unconstitutionally seized cellphone evidence." We reject this claim because law enforcement sought and obtained a warrant before searching the phone's contents, and Corona does not challenge the validity of the warrant on appeal.

¶37 To prevail on a claim of ineffective assistance of counsel, a party must show that "counsel's representation fell below an objective standard of reasonableness," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984). "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious . . . ." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

¶38 Corona has failed on appeal to prove that his Fourth Amendment claim is meritorious because he has mischaracterized the nature of the search. Corona's entire argument is premised on the search of the cell phone being a warrantless search. However, a warrant was obtained. The warrant application unambiguously sought authority to search the contents of the cell phone. And while we acknowledge that there may be issues with the language employed in the warrant itself, Corona, in his principal brief, presents no argument that the warrant was constitutionally infirm. We will not conduct that analysis on his behalf. *See State v. Beckering*, 2015 UT App 53,

¶ 35, 346 P.3d 672. Without this argument, Corona has not established that a motion to suppress would have been successful. Thus, Corona fails to meet his burden of persuasion in proving his Fourth Amendment claim. *State v. MacNeill*, 2017 UT App 48, ¶ 84, 397 P.3d 626. Accordingly, we discern no ineffective assistance as to trial counsel on this point.

### III. Application of Utah's Aggravated Murder Statute

¶39    Corona next challenges the constitutionality of Utah's aggravated murder statute, arguing that one of the aggravating circumstances, felony discharge of a firearm, is disproportionate and violates the state and federal constitutions. However, because Corona's enhanced conviction is independently supported under another aggravating circumstance, i.e., aggravated robbery, his challenge fails.

¶40    Utah's aggravated murder statute enhances criminal homicide to aggravated murder if, among other things, "the homicide was committed incident to . . . aggravated robbery," or if the actor was previously convicted of "felony discharge of a firearm." Utah Code Ann. §§ 76-5-202(1)(d), -202(1)(j)(xvii) (LexisNexis 2017). Corona was convicted of aggravated murder based on a previous felony conviction for discharge of a firearm. The jury also found Corona guilty of aggravated robbery. Both factors independently support Corona's aggravated murder conviction, and Corona does not challenge the constitutionality of the statute under the enhancement for aggravated robbery.

¶41    Because Corona's aggravated murder conviction is supported by his conviction for aggravated robbery, any decision we make regarding the constitutionality of the felony discharge of a firearm enhancement would not affect Corona's constitutional rights. Therefore, the challenge fails.

### IV. Merger

¶42    Finally, Corona contends that his counsel was ineffective for failing to argue that the five shots he fired at Victim—which

were the basis of his five separate convictions for felony discharge of a firearm—should merge with his aggravated murder conviction. However, Corona fails to carry his burden of persuasion that his counsel was ineffective.[5]

¶43    To prevail on an ineffective assistance of counsel claim, a party must "demonstrate that (1) counsel's performance was so deficient as to fall below an objective standard of reasonableness and (2) but for counsel's deficient performance there is a reasonable probability that the outcome of the trial would have been different." *State v. Lee*, 2006 UT 5, ¶ 37, 128 P.3d 1179 (cleaned up), *overruled on other grounds by State v. Wilder*, 2018 UT 17, 420 P.3d 1064. And, as with his ineffective assistance claim regarding the alleged Fourth Amendment violation, *see supra* Part II., Corona must show that his merger claim is meritorious in order to succeed on his claim of ineffective assistance of counsel. *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

¶44    In Utah, merger is defined under Utah Code section 76-1-402. The merger statute "contains two merger tests." *State v. Wilder*, 2018 UT 17, ¶ 22 n.6. The first, under subsection (1) of the statute, addresses whether the same criminal act forms the basis for multiple criminal charges. *See id.* ¶ 35. The second test, found under subsection (3) of the statute, "addresses included offenses—predominantly lesser-included offenses." *Id*. ¶ 22 n.6.

¶45    Under subsection (1),

---

5. A portion of Corona's merger argument focused on common-law merger, which was recently renounced by the Utah Supreme Court. *See State v. Wilder*, 2018 UT 17, ¶ 38 ("We renounce the common-law merger test, which we first set forth in *State v. Finlayson*, 2000 UT 10, 994 P.2d 1243, and recapped in *State v. Lee*, 2006 UT 5, 128 P.3d 1179, and hold that the controlling test is the statutory standard set forth in Utah Code section 76-1-402(1)."). In line with that renunciation, we analyze only those challenges focused on the statutory standard for merger.

> [a] defendant may be prosecuted in a single criminal action for all separate offenses arising out of a single criminal episode; however, when the same act of a defendant under a single criminal episode shall establish offenses which may be punished in different ways under different provisions of this code, the act shall be punishable under only one such provision.

Utah Code Ann. § 76-1-402(1) (LexisNexis 2017). Applying this subsection requires analyzing what constitutes a single offense. *See State v. Rasabout*, 2015 UT 72, ¶ 7, 356 P.3d 1258. However, Corona makes no argument and provides no reasoned analysis concerning the applicability of subsection (1). Instead, Corona attempts to characterize his felony discharge of a firearm convictions under subsection (3) of the merger statute (and cases analyzing that subsection) as lesser-included offenses to his aggravated murder conviction. Following that line of analysis, Corona does not address the question of whether one or all of the shots fired—as well as the resulting murder—constitute a single offense, but instead only "compare[s] the statutory elements of each offense" and attempts to determine whether a greater–lesser relationship exists. Accordingly, under subsection (1), Corona has failed to demonstrate that his claim is meritorious and has therefore failed to show that his counsel was ineffective.

¶46 Corona's claim under subsection (3) likewise fails. Subsection (3) states, "A defendant may be convicted of an offense included in the offense charged but may not be convicted of both the offense charged and the included offense." Utah Code Ann. § 76-1-402(3). Ultimately, "the inquiry of whether one crime is a lesser included offense of a greater crime under section 76-1-402 [] turns on the statutorily defined elements of the two crimes. That is . . . the court looks to the statutory elements of the crime to determine whether it is an included offense." *State v. Finlayson*, 2000 UT 10, ¶ 16, 994 P.2d 1243 (cleaned up), *overruled*

*on other grounds by Wilder*, 2018 UT 17, ¶ 38 (renouncing common-law merger while holding that the statutory standard for merger controls).

¶47   We first look to the elements of the crimes proven at trial to identify whether the crimes "are such that the greater cannot be committed without necessarily having committed the lesser." *See State v. Ross*, 951 P.2d 236, 241 (Utah Ct. App. 1997) (cleaned up). Under Corona's proposed analytical framework, aggravated murder is the greater crime and felony discharge of a firearm is the lesser crime. The elements of aggravated murder are (1) a person "intentionally or knowingly" (2) "causes the death of another," (3) under a circumstance identified in the statute. Utah Code Ann. § 76-5-202(1) (LexisNexis 2017). For example, as was the case here, the homicide was committed incident to aggravated robbery. *Id.* § 76-5-202(1)(d).[6] The elements of felony discharge of a firearm, as far as we must explore them, are (1) a person "discharges a firearm in the direction of any person" while (2) "knowing or having reason to believe that any person may be endangered by the discharge of the firearm." *Id.* § 76-10-508.1(1)(a).

¶48   Looking to the statutory elements of the crimes, felony discharge of a firearm is not an included offense to aggravated murder. While discharging a firearm in the direction of a person *could* cause the death of another, a person can be guilty of murder without *necessarily* being guilty of felony discharge of a firearm. Historically, many instruments other than firearms have been used to cause the death of another. Thus, the crimes do not stand in a greater–lesser relationship and the crimes do not merge under subsection (3). *See State v. Chukes*, 2003 UT App 155, ¶ 10, 71 P.3d 624 ("If the two offenses are such that the greater cannot be committed without necessarily having committed the

---

6. The jury was instructed to accept as true that an aggravating factor was present for the purposes of convicting Corona of aggravated murder.

lesser, then the lesser offense merges into the greater crime and the State cannot convict and punish the defendant for both offenses."(cleaned up)). As a result, Corona fails to show that his merger claim was meritorious, and he thus fails to demonstrate that his counsel was ineffective for not moving to merge his convictions.

## CONCLUSION

¶49 In sum, Corona's arguments are unpersuasive. First, the trial court did not abuse its discretion in allowing the State to enter evidence of the prior shooting. Second, Corona's counsel was not ineffective for failing to challenge the admittance of cell phone evidence. Third, Corona's challenge to the constitutionality of Utah's aggravated murder statute fails because his conviction is independently supported by his aggravated robbery conviction. Finally, Corona has not demonstrated that his counsel was ineffective for failing to move to merge his felony discharge convictions with his aggravated murder conviction because he has not shown that his merger claim was meritorious.

¶50 Affirmed.

_____