**2020 UT App 17**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
BRADY JAMES HANSEN,
Appellant.

Opinion
No. 20180531-CA
Filed January 30, 2020

Third District Court, Salt Lake Department
The Honorable Royal I. Hansen
No. 161906592

Andrea J. Garland and Brenda M. Viera, Attorneys
for Appellant

Sean D. Reyes, Thomas B. Brunker, and Nathan Jack,
Attorneys for Appellee

JUDGE KATE APPLEBY authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and JILL M. POHLMAN concurred.

APPLEBY, Judge:

¶1      Brady James Hansen appeals his convictions of possession of a controlled substance, possession of drug paraphernalia, and possession of a firearm by a restricted person. Hansen asserts the district court plainly erred in not intervening to exclude evidence of his prior convictions of possession of methamphetamine. Hansen further maintains there is insufficient evidence to support the verdict. We affirm.

## BACKGROUND[1]

¶2    While on patrol, a police officer (Officer) overheard a dispatch call reporting that, at a house not far from him, someone brandished a firearm and then "left in a red passenger car, possibly a [Ford] [M]ustang." A few minutes later, as Officer was en route to the scene, he observed a woman (Woman) dash across a four-lane street and quickly enter the passenger side of "a red . . . Mustang" while the car was moving. Another passenger (Passenger) was already inside the car. Because the car matched the description provided in the dispatch call, Officer signaled the car to stop. When the car stopped, the driver, Hansen, began to exit the vehicle. "[W]ith the description of the car and the involvement of a firearm," Officer "didn't feel comfortable with the driver getting out," so he instructed Hansen to return to the car while he awaited backup and Hansen complied. As Officer waited, he saw Hansen "bending over in the driver's seat," and from his point of view, "it looked like [Hansen] was either trying to kick stuff or get something from underneath the . . . driver's seat."

¶3    Another officer (Backup Officer) soon arrived. Officer and Backup Officer directed the car's occupants to exit the car, one at a time, starting with Hansen, then Woman, then Passenger. The officers directed Hansen to walk backward toward them with his hands up. When Hansen reached the officers, Backup Officer detained him and gave him a "pat down." Without being asked, Hansen "informed [Backup Officer] that there was a gun under the seat of the car."

---

1. "On appeal, we construe the record facts in a light most favorable to the jury's verdict and recite the relevant facts accordingly." *State v. Murphy*, 2019 UT App 64, n.2, 441 P.3d 787 (quotation simplified).

¶4      Officer "looked under the driver's seat and initially . . . saw a partially unzipped sunglass case which exposed what [he] believed to be methamphetamine and narcotic baggies." When he "slid aside the sunglass case," he saw a handgun.

¶5      Backup Officer informed Hansen of his *Miranda*[2] rights, specifically his right to remain silent, but Hansen continued talking. Backup Officer testified that Hansen said "he was the only one that possessed [the gun], touched it, nobody else had—basically had access to it." He told Officer that when Officer "pulled up behind [him,] he panicked and placed the gun and the . . . sunglass container . . . underneath the driver's seat." Hansen acknowledged "that he was a meth user" and that the sunglass case contained narcotics, but he claimed the case belonged to a friend who had been in the backseat just before Hansen was stopped by the police. The State charged Hansen with, among other things, possession of a controlled substance, possession of a firearm while being a restricted person, and possession of paraphernalia.

¶6      At trial, Hansen testified in his own defense. Hansen said after he was pulled over, he reached down toward the driver side floorboard because he dropped his car keys when Woman tried to wrest them from him. He said that was "[t]he only thing [he could] think of that [he would] be reaching for or doing anything like that," though Officer testified that when he looked on the floor of the vehicle, he did not see any keys. Hansen said he did not tell either of the officers that he used methamphetamine and claimed he had "no idea about any drugs in [his] car."

¶7      During cross-examination, Hansen testified that he presently did not use methamphetamine, at which point the

---

2. *See Miranda v. Arizona*, 384 U.S. 436, 468–69 (1966).

prosecutor asked, "So you've never been convicted of or pled guilty to possession of methamphetamine?" Hansen replied, "I have, but I don't." The prosecutor followed up with questions about how many times Hansen "pled guilty of [possession of] methamphetamine," to which Hansen responded, "A few," and then clarified, "Five, I think."

¶8     At that point, Hansen's trial counsel moved for a mistrial, arguing that it was improper for the jury to hear information about possession charges related "to events that occurred after these events." The State argued this questioning was intended to impeach Hansen's testimony that he presently did not use methamphetamine. The district court determined Hansen "open[ed] the door when he said that he wasn't a methamphetamine user" and denied the motion for mistrial. The court also said it would not give a curative instruction because the instruction would be "inappropriate where [Hansen] raised the issue." Hansen then offered clarifying testimony that his convictions and guilty pleas were "recent[]" and that he had no "convictions for methamphetamine" at the time of arrest in the present case. His counsel later reiterated her concerns about this line of questioning and again asked for a mistrial. The district court once again determined Hansen "opened the door" and stated Hansen's additional testimony gave "context and clarification." Hansen's trial counsel did not request analysis under rule 403 of the Utah Rules of Evidence or suggest that the questions about his convictions were offered to attack his character for truthfulness. Despite its prior decision not to do so, the court instructed the jury that the evidence of Hansen's prior convictions "was brought to [the jury's] attention only to help [it] evaluate the credibility of the defendant as a witness."

¶9     The jury convicted Hansen on one count of possession of a controlled substance, one count of possession of a firearm by a restricted person, and one count of possession of drug paraphernalia. He appeals.

ISSUES AND STANDARD OF REVIEW

¶10    Hansen raises two issues on appeal. First, he claims the district court erred when it did not intervene to exclude evidence of his prior methamphetamine-possession convictions. Because this issue is unpreserved,[3] Hansen argues it should be reviewed for plain error. Second, Hansen alleges the district court plainly erred in submitting the case to the jury because there was insufficient evidence to convict him of possession of methamphetamine and possession of drug paraphernalia while being in possession of a firearm. "The plain error standard of review requires an appellant to show the existence of a harmful error that should have been obvious to the district court." *State v. Robinson*, 2018 UT App 103, ¶ 20, 427 P.3d 474 (quotation simplified).

_____

3. Hansen claims this issue was preserved "by trial counsel's repeated motions for mistrial." But Hansen is not appealing the court's denial of his motions for mistrial; instead, he alleges the district court erred when it did not intervene to stop the State from asking questions pertaining to his prior misdemeanor convictions and in doing so, admitted evidence in violation of rules 608 and 609 of the Utah Rules of Evidence. "In order to preserve an issue for appeal the issue must be presented to the [district] court in such a way that the [district] court has an opportunity to rule on that issue. This requirement puts the [district] judge on notice of the asserted error and allows for correction at that time in the course of the proceeding." *Salt Lake City v. Josephson*, 2019 UT 6, ¶ 12, 435 P.3d 255 (quotation simplified). Because Hansen did not object at trial to the State's line of questioning as being in violation of rules 608 and 609 of the Utah Rules of Evidence, this argument is unpreserved.

ANALYSIS

I. Admission of Prior Convictions for Impeachment

¶11 Hansen argues the district court plainly erred by not intervening when the State asked him about his prior convictions after he testified that he presently did not use methamphetamine. Hansen claims the State's questions about his prior convictions violated rules 608, 609, and 403 of the Utah Rules of Evidence. Hansen has a "high burden" to meet here because he "must demonstrate that (i) an error exists; (ii) the error should have been obvious to the [district] court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant." *State v. Bond*, 2015 UT 88, ¶ 36, 361 P.3d 104 (quotation simplified). Hansen fails on this claim because he is unable to show that an error on the part of the district court exists, let alone an error that should have been obvious.

¶12 Rules 608 and 609 of the Utah Rules of Evidence govern what evidence may be introduced to attack a witness's character for truthfulness or untruthfulness. *Robinson v. Taylor*, 2015 UT 69, ¶ 14, 356 P.3d 1230. But "[t]hese rules are mutually exclusive: [w]hen specific instances of conduct are the subject of a conviction, they are governed exclusively by rule 609. And if the specific acts do not involve a conviction, they are governed by rule 608." *Id.* ¶ 16. Thus, as a threshold matter, rule 608 is inapplicable here because evidence the State presented involved convictions, a category that does not fall under the purview of rule 608.

¶13 "Rule 609 permits a party to attack a witness's character for truthfulness using evidence of a criminal conviction." *State v. Alzaga*, 2015 UT App 133, ¶ 32, 352 P.3d 107. But we agree with the State that Hansen's prior convictions were not used to show his *character for truthfulness*; rather, they were introduced only to

cast doubt on the *credibility of Hansen's testimony* that he presently did not use methamphetamine and that he did not know there was methamphetamine in his car. Rule 609 is arguably inapplicable to this situation.

¶14 "Once the defendant offers evidence or makes an assertion as to any fact, the State may cross-examine or introduce on rebuttal any testimony or evidence which would tend to contradict, explain[,] or cast doubt upon the credibility of [his testimony]." *State v. Corona*, 2018 UT App 154, ¶ 23, 436 P.3d 174 (quotation simplified). The State arguably did that here. Hansen, on direct examination, claimed he "had no idea about any drugs in [his] car" and denied telling Officer he used methamphetamine. On cross-examination, the State asked him whether he uses methamphetamine, which Hansen denied, then asked whether he had "been convicted of or pled guilty to possession of methamphetamine" and followed up by asking how many times Hansen had pled guilty to the crime. The State's questioning about Hansen's use of methamphetamine was not so obviously objectionable that the district court plainly erred in failing to intervene to stop the line of questioning. The court did not know the answer to the question regarding Hansen's use of methamphetamine, and Hansen's past use of methamphetamine casted doubt on his claim that he was not a methamphetamine user. We conclude that the State's inquiries regarding Hansen's convictions were arguably relevant to his credibility, and thus we conclude the district court did not plainly err in failing to stop the line of questioning. *See Bond*, 2015 UT 88, ¶ 15.

¶15 Hansen's argument that the questioning violated rule 403 of the Utah Rules of Evidence is also unavailing. As applicable here, a district "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Utah R. Evid. 403. Hansen cannot meet this "high burden" of establishing that the district court plainly erred

when it did not stop the line of questioning. *See Bond*, 2015 UT 88, ¶ 36. Impeaching Hansen's testimony was important to the State because Hansen took the stand and denied using drugs, denied telling the officers that drugs were in his vehicle, and denied knowing the drugs were in his vehicle. Because Hansen's credibility and Officer's credibility were both at issue, and Hansen's denials squarely contradicted Officer's testimony, Hansen's prior convictions related to possession of methamphetamine were likely highly probative of whether he lied when he testified that he did not use methamphetamine. Although Hansen's prior convictions for methamphetamine possession were certainly prejudicial to some extent, Hansen has not shown that the prejudice so substantially outweighed the probative value of the evidence that the court plainly erred by not intervening. *See State v. Hall*, 946 P.2d 712, 723 (Utah Ct. App. 1997) (noting the importance of defendant's credibility as a factor that weighed against excluding impeachment evidence under rule 403). Thus, we see no plain error in the State impeaching Hansen with evidence of his prior convictions. *See Bond*, 2015 UT 88, ¶ 15.

## II. Sufficiency of the Evidence

¶16    Hansen argues there was insufficient evidence to convict him of possession of a controlled substance, possession of a firearm by a restricted person, and possession of drug paraphernalia. We disagree. To establish plain error in this context, "a defendant must demonstrate first that the evidence was insufficient to support a conviction of the crime charged and second that the insufficiency was so obvious and fundamental that the [district] court erred in submitting the case to the jury." *State v. Holgate*, 2000 UT 74, ¶ 17, 10 P.3d 346.

¶17    We conclude there was sufficient evidence to support a conviction. Before ordering Hansen out of his vehicle, Officer saw Hansen "bending over in the driver's seat" as if he were

"trying to kick stuff or get something from underneath the . . . driver's seat." Once detained, Hansen told Backup Officer "that there was a gun under the seat of the car." Officer looked under the driver's seat of the car and found the gun only after he noticed an unzipped sunglass case, "which exposed what [Officer] believed to be methamphetamine and narcotic baggies." Additionally, Hansen informed Backup Officer that "he was the only one that possessed [the gun], touched it, nobody else . . . had access to it." Officer also testified that Hansen told him "he was a meth user," and despite claiming the methamphetamine in the sunglass case belonged to a friend, Hansen told Backup Officer "he was aware that it [contained] narcotics."

¶18   This is sufficient evidence for a jury to find Hansen possessed the methamphetamine, paraphernalia, and the firearm that were found under the driver seat of his car, and we thus discern no "insufficiency . . . so obvious and fundamental that the [district] court erred in submitting the case to the jury." *Id.*

## CONCLUSION

¶19   Because the district court did not obviously err in allowing the State's questions about Hansen's prior convictions, and because there was sufficient evidence to convict him on all counts, we affirm.

———————