**2018 UT App 177**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
THEODORE JAMES SAMUL,
Appellant.

Opinion
No. 20160465-CA
Filed September 13, 2018

Third District Court, Salt Lake Department
The Honorable Judith S.H. Atherton
No. 021913406

Teresa L. Welch and Robin K. Ljungberg, Attorneys
for Appellant

Sean D. Reyes and Tera J. Peterson, Attorneys
for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and JILL M. POHLMAN
concurred.

HARRIS, Judge:

¶1     Theodore James Samul pled guilty to attempted aggravated sexual assault and kidnapping, and was sentenced to consecutive prison sentences. He appeals those sentences, raising two general issues for our review. First, Samul argues that the terms of the plea agreement called for concurrent sentences, and that the State breached that agreement when the prosecutor failed to affirmatively argue for concurrent sentences. Samul asserts that his attorney rendered ineffective assistance, and that the district court committed plain error, by failing to require the State to abide by the plea agreement. Second, Samul asserts that the district court plainly erred by imposing

consecutive (rather than concurrent) sentences without adequately considering his history, character, and rehabilitative needs. We affirm Samul's sentences.

BACKGROUND

¶2 In December 2002, Samul was charged with aggravated sexual assault and aggravated kidnapping, both first degree felonies, in connection with an incident in which his sister accused him of raping her while driving her home from a family party. A few months later, Samul pled guilty to attempting to commit both offenses, admitting that he "seized [the victim] against her will with the intent to attempt to rape her." No recording of the change of plea hearing at which Samul pled guilty has been preserved, but the details of Samul's guilty plea were set forth on a written plea agreement form. In a section entitled "Plea bargain," that agreement states that "[a]ll the promises, duties, and provisions of the plea bargain . . . are fully contained in this statement, including those explained below," and states that Samul will plead to amended charges. Immediately beneath that statement, the form contains two handwritten words: "CONCURRENT SENTENCES."

¶3 After accepting Samul's plea, the district court scheduled a sentencing hearing to be held nearly two months later. In the meantime, Adult Probation and Parole (AP&P) prepared a pre-sentence report. In that report, AP&P noted several mitigating factors that worked in Samul's favor, including that he had a fiancé and a child, that he had a history of drug and alcohol problems for which he had sought treatment, that he was gainfully employed, and that he expressed contrition and accepted full responsibility for his actions. The pre-sentence report also noted several aggravating factors, however, including that Samul's actions in this case were particularly egregious and harmful, that he continued to use drugs and alcohol despite access to treatment options, and that in AP&P's estimation he posed a continuing "danger to the community."

AP&P thus recommended that Samul be sentenced to two prison terms of three-years-to-life, to run consecutively.

¶4     At the sentencing hearing, the court first noted that it had reviewed the pre-sentence report. Samul's attorney then addressed the court and emphasized Samul's supportive family and "strong employment record," as well as the fact that his troubles appeared to be related to drug and alcohol use. Counsel did not explicitly argue for a sentence other than prison, but implied that Samul would be amenable to treatment, and argued that, "if the Court is inclined" to impose prison sentences, the sentences should be imposed concurrently, asserting that AP&P's recommendation for consecutive sentences was "not appropriate."

¶5     The prosecutor then addressed the court, and argued that "prison is the absolute appropriate sentence in this case. It's the wish of the victim. I believe that [prison] is really the only appropriate response to what happened here, and I do encourage the Court to follow the pre-sentence report recommendation." In her next sentence, the prosecutor stated that, "[a]s part of the plea bargain, I agree to not speak to the issue of consecutive and concurrent, but I will leave that to the court's decision." Samul's attorney did not express any concern with the prosecutor's statements during the sentencing hearing.

¶6     At the conclusion of the sentencing hearing, the district court told Samul his offense was "disturbing in a number of different ways," and noted that the violence Samul inflicted on his sister was "extreme." The court then indicated that it would "keep you in prison as long as I possibly can because I think it's the only safe way to sentence you for your victim and for the community at large." Accordingly, the court sentenced Samul to consecutive prison terms.

¶7     Samul did not initially appeal his sentence. Nine years later, in 2012, Samul filed a pro se motion seeking to correct alleged errors in his sentence. Samul's motion included a claim

that his right to file a direct appeal should be reinstated, pursuant to *Manning v. State*, 2005 UT 61, 122 P.3d 628, and rule 4(f) of the Utah Rules of Appellate Procedure, because he was not made aware of his right to appeal at his sentencing hearing as required by rule 22(c) of the Utah Rules of Criminal Procedure. The district court corrected one error in Samul's sentence, reducing his sentence for attempted kidnapping to one-to-fifteen-years (as opposed to three-years-to-life), but denied Samul's remaining claims. Samul appealed, and we reversed in part, remanding the case for a determination of whether the district court, back in 2003, had "neglected to inform [Samul] of his right to appeal and of the time period in which to do so." *See State v. Samul*, 2015 UT App 23, ¶ 35, 343 P.3d 719. On remand, the district court determined that Samul was not properly advised of his right to appeal during his sentencing hearing, and therefore reinstated the thirty-day time period within which Samul could file a direct appeal. Samul subsequently initiated the present appeal.

## ISSUES, STANDARDS OF REVIEW, AND PRESERVATION

¶8    Samul raises two general issues for our review. First, Samul contends that the State was obligated, under the terms of the plea agreement, to affirmatively argue for concurrent sentences at the sentencing hearing, and that the State breached the plea agreement by failing to do so. Second, Samul contends that the district court erred by imposing consecutive (rather than concurrent) sentences without adequately considering his history, character, and rehabilitative needs.[1]

---

1. In his brief, Samul also asked for alternative relief in the form of a remand to "reconstruct the record" regarding Samul's change of plea hearing. However, Samul's appellate counsel appeared to abandon this position at oral argument. Moreover, and in any event, we are not persuaded by Samul's request for a

(continued…)

¶9     Samul acknowledges that he did not alert the district court that the State had allegedly breached the plea agreement, and therefore concedes that he failed to preserve his first issue. "When a party fails to raise and argue an issue in the trial court, it has failed to preserve the issue, and an appellate court will not typically reach that issue absent a valid exception to preservation." *State v. Johnson*, 2017 UT 76, ¶ 15, 416 P.3d 443. Our supreme court "has recognized three distinct exceptions to preservation: plain error, ineffective assistance of counsel, and exceptional circumstances." *Id.* ¶ 19. Samul asks for review of his first issue under two of these exceptions: plain error and ineffective assistance of counsel.

¶10     Samul contends that the district court plainly erred by failing to require the State to affirmatively argue for concurrent sentences. To prevail on such a claim, Samul must show that: "(i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) . . . absent the error, there is a reasonable likelihood of a more favorable outcome for [Samul]." *State v. Bedell*, 2014 UT 1, ¶ 20, 322 P.3d 697 (quotation simplified).

¶11     Samul also contends that his attorney was constitutionally ineffective in failing to object to the State's characterization of the

_____

(…continued)
remand, because the only way such a reconstruction could benefit Samul is if Samul's previous attorney were able to testify that his recollection of the terms of the plea bargain in this case differs from the State's position, and that the State actually did agree to affirmatively argue for concurrent sentences. We know, however, that Samul's attorney cannot so testify, because Samul's attorney has already testified in this case that, not only does he not remember the precise terms of the fifteen-year-old plea bargain, he has "no independent recollection" of the case at all, and has destroyed his files pertinent to this case. Under these circumstances, a remand to reconstruct the record would be futile even if Samul had not abandoned his request.

plea agreement at the sentencing hearing. "When a claim of ineffective assistance of counsel is raised for the first time on appeal, there is no lower court ruling to review and we must decide whether the defendant was deprived of the effective assistance of counsel as a matter of law." *Layton City v. Carr*, 2014 UT App 227, ¶ 6, 336 P.3d 587 (quotation simplified).

¶12    With regard to the second issue—whether the district court erred by imposing consecutive sentences—Samul asserts that he preserved the issue, but in the alternative asks us to review the issue for plain error. We agree with the State's position that Samul failed to preserve this issue for appellate review. Samul contends that he preserved the issue by asking for concurrent sentences and presenting mitigating evidence at sentencing. However, to preserve an issue for appellate review, a defendant must first "present the issue to the trial court in such a way that the court had the opportunity to resolve it." *State v. Gailey*, 2015 UT App 249, ¶ 5, 360 P.3d 805. In order to preserve for appellate review an argument that a sentencing court "erred by imposing consecutive sentences without considering all of the relevant statutory factors and by failing to give adequate weight to various mitigating factors," a defendant must specifically raise that issue with the sentencing court and must provide that court with supporting evidence and relevant legal authority. *Id.* at ¶¶ 4-5. Merely presenting mitigating evidence and asking the sentencing court for a different sentence, without more, does not preserve the issue for appellate review. *Id*. ¶¶ 4–5; *see also State v. Tingey*, 2014 UT App 228, ¶ 3, 336 P.3d 608 (noting that where a defendant could not "demonstrate[] that he specifically objected to or otherwise brought to the trial court's attention the court's alleged failure to consider the requisite statutory factors in imposing sentence," the issue was not preserved for appellate review). In this case, Samul did nothing more than ask for concurrent sentences and present mitigating evidence. Accordingly, under *Gailey* and *Tingey*, Samul failed to preserve this issue. We therefore review this issue for plain error in accordance with Samul's alternative request.

ANALYSIS

A

¶13   First, Samul argues that the State breached the plea agreement by failing to argue affirmatively for concurrent sentences, and asserts that his attorney rendered ineffective assistance, and that the district court plainly erred, by failing to require the State to abide by the terms of the plea agreement. This argument, in both of its iterations, fails because the plea agreement is ambiguous.[2]

¶14   Under Samul's interpretation of the words "CONCURRENT SENTENCES," the State agreed to affirmatively argue for the imposition of concurrent rather than consecutive sentences. Under another at least equally reasonable interpretation, the State agreed to do nothing more than refrain from opposing Samul's advocacy for concurrent sentences. Samul vigorously argues that the plea agreement is

_____

2. We acknowledge that principles of plea agreement interpretation generally favor the defendant, and that "courts may in certain circumstances hold the government to a higher standard than the defendant." *See State v. Patience*, 944 P.2d 381, 387 (Utah Ct. App. 1997). Had it been brought to the court's attention at the sentencing hearing that there was a dispute about the meaning of the plea agreement, the court may have been obligated in that context to construe any ambiguity against the State. *See, e.g.*, 21 Am.Jur.2d Criminal Law § 617 (2018) (stating that "[a]ny ambiguities in a plea agreement in a criminal case are construed against the government"). However, because the issue was not brought to the court's attention, we review this issue only for plain error and for ineffective assistance of counsel, and in those contexts, for the reasons discussed below, the presence of unacknowledged ambiguity works against Samul. *See State v. Gray*, 2016 UT App 87, ¶ 21 n.6, 372 P.3d 715; *State v. Friel*, 2015 UT App 95, ¶ 8, 347 P.3d 724.

unambiguous and cannot possibly encompass the second interpretation, but we are not persuaded. Plea agreements are generally interpreted using principles of contract law. *See State v. Terrazas*, 2014 UT App 229, ¶¶ 26–27, 336 P.3d 594 (stating that "principles of contract law provide a useful analytic framework" to assist in determining "what the parties reasonably understood to be the terms of [a plea] agreement" (quotation simplified)). With regard to ambiguities, "courts are particularly willing to identify ambiguities in plea agreements because of the significant constitutional rights the defendant waives by entering a guilty plea." *Id.* ¶ 27 (quotation simplified). Under contract law, an agreement is ambiguous "if it is capable of more than one reasonable interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies." *Novell, Inc. v. Canopy Group, Inc.*, 2004 UT App 162, ¶ 20, 92 P.3d 768 (quotation simplified). However, "terms are not ambiguous simply because one party seeks to endow them with a different interpretation according to his or her own interests." *See Mind & Motion Utah Investments, LLC v. Celtic Bank Corp.*, 2016 UT 6, ¶ 24, 367 P.3d 994. Instead, both interpretations "must be plausible and reasonable in light of the language used." *Id.* In this case, it strikes us as an entirely reasonable interpretation for the words "CONCURRENT SENTENCES" to mean that Samul will argue for concurrent sentences, and the State will not oppose that argument. Because both possible interpretations are reasonable, we consider the plea agreement to be ambiguous.

¶15    The presence of ambiguity defeats Samul's argument that his counsel was ineffective. In order to prove that counsel was constitutionally ineffective, Samul must establish both (1) that counsel's performance was objectively deficient; and (2) that there is a reasonable probability that, but for counsel's deficient performance, Samul would have received a more favorable outcome. *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984). To prevail on the first element, Samul must "overcome the strong presumption that trial counsel rendered adequate assistance and exercised reasonable professional judgment," *State v. Burnett*, 2018 UT App 80, ¶ 21 (quotation simplified), "by

persuading the court that there was *no conceivable tactical basis* for counsel's actions." *State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162 (quotation simplified).

¶16 Here, we can easily conceive of a reasoned basis for counsel's decision not to object to the State's remarks at sentencing: counsel may have believed that the State was accurately describing the terms of the plea agreement. Given the ambiguity of the phrase "CONCURRENT SENTENCES," it is plausible that counsel believed that the plea agreement simply secured the State's promise not to oppose Samul's argument for concurrent sentences, an interpretation that would have mirrored the State's. Samul has advanced no argument to undermine this potential explanation for counsel's actions, and therefore has fallen short of overcoming the strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment. Accordingly, Samul has not demonstrated that counsel was constitutionally ineffective for failing to object to the State's remarks at sentencing.

¶17 The presence of ambiguity likewise defeats Samul's argument that the district court committed plain error. While Samul is certainly correct that district courts can and should take action when a prosecutorial breach of a plea agreement is brought to its attention, *see State v. Smit*, 2004 UT App 222, ¶ 17, 95 P.3d 1203 (determining that "when a plea agreement is breached by the prosecutor, the proper remedy is either specific performance of the plea agreement or withdrawal of the guilty plea both at the discretion of the trial judge"), those agreements are contracts between the State and the defendant, and district courts typically do not participate in their negotiation. When their terms are ambiguous, district courts naturally depend on the parties and their attorneys to help the court understand what the terms of the agreement are, and whether there exists any disagreement about their meaning. When the State characterizes the agreement in a particular way in open court, and the defense attorney fails to take issue with the State's characterization, a district court may reasonably assume that the attorneys are

proceeding in accordance with their agreement. At a minimum, it is a far cry from obvious error for the district court to rely on the attorneys' characterization of an ambiguous plea agreement.[3]

¶18   This conclusion is bolstered by *State v. Gray*, 2016 UT App 87, 372 P.3d 715. In that case, a defendant pled guilty to six felony charges pursuant to a plea agreement in which the prosecutor agreed to recommend that five of the defendant's sentences run concurrently, while reserving the right to recommend that the sixth run consecutively. *Id.* ¶ 2. At the sentencing hearing, the prosecutor stated that he had agreed to recommend that five sentences run concurrently but that he had "stated all along" that he would ask for the sixth sentence to run consecutively. *Id.* ¶ 7 (quotation simplified). The prosecutor then asked the court to "hand out the maximum punishment in this case." *Id.* (quotation simplified). The defendant's counsel raised no objection to the prosecutor's statements, *id.* ¶ 21 n.6, and the court subsequently ordered that all of the defendant's sentences run consecutively, *id.* ¶ 11. The defendant appealed to this court, arguing that the prosecutor breached the plea agreement when he asked the court to impose the "maximum punishment," and that the court had committed plain error by allowing the breach. *Id.* ¶¶ 12, 14. This court disagreed, noting that because the

---

3. Samul also argues that the prosecutor breached the plea agreement by encouraging the district court "to follow the presentence report recommendation." We disagree with this characterization. The prosecutor's statement was referring to that part of the report that recommended that Samul be sentenced to prison rather than jail and probation. This was made clear by the prosecutor's next statement that, "[a]s part of the plea bargain, I agree to not speak to the issue of consecutive and concurrent." Considered in the "context of the entire hearing," *see State v. Gray*, 2016 UT App 87, ¶ 16, 372 P.3d 715, we do not read the prosecutor's statements as encouraging the district court to follow the presentence report's recommendation of consecutive (as opposed to concurrent) sentences.

prosecutor clarified the terms of the plea agreement before his "maximum punishment" request, the "context of the hearing as a whole [did] not support [the defendant's] claim" that it would have been obvious to the district court that the State breached the plea agreement. *Id*. ¶¶ 15–17. This court further noted that, "[w]hile defense counsel's inaction is certainly not dispositive, his silence suggests that he saw no error in the prosecutor's presentation worthy of correction and reinforces our conclusion that the alleged breach, if any, was not obvious." *Id*. ¶ 21 n.6; *see also State v. Friel*, 2015 UT App 95, ¶ 8, 347 P.3d 724 (noting that where a defendant "never alerted the district court" that she believed a prosecutor's description of a plea agreement during sentencing was incorrect, that disagreement "would not have been obvious" to the court).

¶19 In this case, as in *Gray*, it is far from clear—in the context of the entire hearing—that the State breached the plea agreement during its sentencing argument. Likewise, as in *Gray*, defense counsel's inaction following the State's remarks strongly suggests that he "saw no error in the prosecutor's presentation worthy of correction," and strongly indicates that any breach would not have been obvious to the district court even had one occurred. Accordingly, the district court did not plainly err when it did not take issue with the prosecutor's remarks at the sentencing hearing.[4]

---

4. In his brief, Samul tries to evade this conclusion by citing to *State v. King*, 576 N.W.2d 369 (Iowa 1998). In that case, a prosecutor promised as part of a plea agreement to remain entirely silent at sentencing, but nonetheless spoke at the defendant's sentencing and recommended defendant receive a harsh sentence. *Id.* at 370. On appeal, the Supreme Court of Iowa vacated the sentence and remanded the case for resentencing, holding that "the prosecutor's promise to remain silent at sentencing, a commonly bargained-for component of a plea agreement, was ignored" and that this amounted to a breach that

(continued…)

B

¶20    Second, Samul argues that the district court erred by sentencing him without adequately considering his history, character, and rehabilitative needs. As noted above, due to Samul's failure to raise this issue below, we review it here for plain error, and we conclude that Samul has fallen well short of demonstrating that the district court plainly erred.

¶21    Under Utah law, sentencing courts considering whether to impose concurrent or consecutive prison sentences are required to consider "the gravity and circumstances of the offenses, the number of victims, and the history, character, and rehabilitative needs of the defendant." *See* Utah Code Ann. § 76-3-401(2) (LexisNexis 2017). This is not to say, however, that a sentencing court must always expressly mention these factors on the record at the sentencing hearing. Indeed, as a "general rule" we will "uphold[] the [sentencing] court even if it failed to make findings on the record whenever it would be reasonable to assume that the court actually made such findings." *State v. Helms*, 2002 UT 12, ¶ 11, 40 P.3d 626 (quotation simplified). Moreover, "we will not assume that the [sentencing] court's silence, by itself, presupposes that the court did not consider the proper factors as required by law." *Id*. Instead, it is a defendant's "burden to demonstrate that the [sentencing] court failed to properly consider legally relevant factors," *State v. Bunker*, 2015 UT App 255, ¶ 3, 361 P.3d 155, and this burden cannot be met "by merely pointing to a lack of written findings or the existence

_____

(…continued)
"tainted the entire sentencing proceeding." *Id* at 371. This case does not save Samul's argument for two reasons: first, because Samul has not demonstrated that the State made argument on an issue on which it agreed to remain silent, or that the State remained silent on an issue on which it agreed to make argument, and second, because *Gray* and *Friel* (rather than *King*) are binding precedent in Utah.

of mitigating circumstances," *id.* (citing *Helms*, 2002 UT 12, ¶ 16); *see also id.* (stating that "neither our case law nor our statutes require a [sentencing] court to make specific findings of fact in a sentencing order" (quotation simplified)). Instead, when reviewing a court's sentencing decision against a challenge that it failed to consider the required statutory factors, "we begin with the presumption" that the court properly considered the factors. *See State v. Valdez*, 2017 UT App 185, ¶ 17, 405 P.3d 952.

¶22 On this record, Samul fails to persuasively rebut this presumption. Here, Samul argues that the district court did not take various mitigating factors into account during his sentencing, including that Samul's adult criminal history was not extensive, that Samul was remorseful and accepted responsibility for his crime, that Samul had struggled with drug and alcohol abuse and had previously voluntarily attended treatment programs, and that Samul had a good employment record and strong family connections. However, these mitigating factors were noted in AP&P's pre-sentence report, and the district court stated at the beginning of the sentencing hearing that it had reviewed that report. In addition, as Samul acknowledges, the district court was further made aware of these mitigating factors during the sentencing hearing, when Samul's counsel discussed them at some length.

¶23 Under these circumstances, Samul has failed to rebut the presumption that the district court considered the gravity and circumstance of Samul's offenses, the number of victims, and Samul's history, character, and rehabilitative needs. All of these issues were covered in the pre-sentence report, which the district court reviewed, and most of these factors were expressly discussed at the hearing. *See State v. Monzon*, 2016 UT App 1, ¶ 22, 365 P.3d 1234 (stating that, where "the mitigating evidence that [defendant] believes the district court should have considered was discussed at the first sentencing hearing or was set forth in the [pre-sentence report] . . . , we presume that the district court considered that information prior to sentencing"). Accordingly, Samul has not demonstrated that the district court

plainly erred by failing to consider the required statutory factors in the course of making its decision to sentence Samul to consecutive sentences.[5]

CONCLUSION

¶24    Samul has not established that the district court plainly erred, or that his attorney rendered ineffective assistance, when they did not challenge the prosecutor's remarks at Samul's sentencing hearing. Samul has also failed to establish that the district court did not adequately consider his history, character, and rehabilitative needs, and Samul therefore falls short of demonstrating that the district court plainly erred by imposing consecutive (rather than concurrent) sentences. Accordingly, we affirm Samul's sentences.

———————

5. Samul argues that three cases—*State v. Galli*, 967 P.2d 930 (Utah 1998), *State v. Smith*, 909 P.2d 236 (Utah 1995), and *State v. Strunk*, 846 P.2d 1297 (Utah 1993)—require the conclusion that the district court's sentencing decision was erroneous. The State asserts that those cases have been superseded by statute, but we need not reach that argument because, even if those cases remain good law, we are not persuaded that they apply here in any event. In those cases, our supreme court held that courts had abused their discretion by imposing lengthy consecutive sentences that—under the statutory scheme then in effect— effectively prevented the Board of Pardons from considering parole for decades. *See Gray*, 2016 UT App 87, ¶ 30 (discussing *Galli*, *Smith*, and *Strunk*, which imposed combined minimum sentences of fifteen to sixty years). In this case, after the district court corrected the sentencing error, Samul faced one sentence of three-years-to-life, and another sentence of one-to-fifteen-years, for a combined minimum sentence of four years. This sentence does not unduly impact the Board of Pardons' ability to review Samul's eligibility for parole. Accordingly, Samul's reliance on *Galli*, *Smith*, and *Strunk* is misplaced.