**2020 UT App 156**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
RANDY THOMAS NAVES,
Appellant.

Opinion
No. 20180343-CA
Filed November 13, 2020

Third District Court, Salt Lake Department
The Honorable Homer F. Wilkinson
No. 971900998

Andrea J. Garland, Attorney for Appellant

Sean D. Reyes and Tera J. Peterson, Attorneys
for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which JUDGES
DAVID N. MORTENSEN and JILL M. POHLMAN concurred.

HARRIS, Judge:

¶1     Randy Thomas Naves pled guilty to three counts of sexual abuse of a child, one count of dealing in harmful material to a minor, and one count of lewdness involving a child. The district court sentenced Naves to prison, ordering that the sentences on two of the counts run concurrently and the remainder run consecutively. Naves now appeals, arguing that his attorney rendered ineffective assistance at sentencing, and asserting that the district court abused its discretion in ordering some of his sentences to run consecutively. We affirm.

BACKGROUND

¶2     In 1997, Naves—a long-haul truck driver—invited several neighborhood boys, all of whom were younger than fourteen, to spend the night with him in the sleeper part of his truck cab. Naves taught the boys to play a sexually explicit card game, showed them how to put on a condom by putting one on his own penis, masturbated in front of the boys, had mutual "manual contact with each other[']s penises," and asked one of the boys to perform oral sex on him. Naves was charged with nine criminal counts related to these events, including three first-degree felonies.

¶3     With counsel's help, Naves negotiated a plea agreement with the State, whereunder the State agreed to dismiss four of the counts and Naves agreed to plead guilty to five others, as amended: three counts of sexual abuse of a child, all second-degree felonies; one count of dealing in harmful material to a minor, a third-degree felony; and one count of lewdness involving a child, a class A misdemeanor. In the plea agreement, Naves admitted that he showed the boys pornographic material, exposed his own penis to them, "touched the penis" of two of the boys, and had one of the boys touch his penis.

¶4     Following the entry of Naves's plea, Adult Probation and Parole (AP&P) prepared a twenty-one-page presentence report for the benefit of the district court at sentencing. The report summarized the events leading to the criminal charges, and included Naves's own statement acknowledging that much of the behavior he had been accused of had in fact occurred. However, AP&P concluded that Naves did not appear to take full responsibility for what happened, and that he continued to "den[y] any sexual intent, and [gave] the impression he was drawn into sexual activity by the children." In the report, AP&P also noted that Naves had a history of sexually abusing other children: he had previously been convicted of committing a lewd act in the presence of a child in California, and he admitted to AP&P officers during an interview that he had "a few [other] victims over the years," including as many as three victims

under the age of fifteen. The report included input from the investigating officer, who opined that he had "never run into a pedophile who has gone to these lengths" to involve children in sexual activity. The report also made note of the fact that Naves himself had been sexually abused as a young boy and as a teenager. In addition, the report discussed Naves's psychosexual evaluation, including the evaluator's opinions that Naves had "a poor treatment prognosis" and posed "a significant risk to reoffend." Ultimately, AP&P recommended that Naves be sentenced to prison and that his sentences all run consecutively.

¶5 At the sentencing hearing, in addition to hearing argument from Naves's attorney and from the prosecutor, the court allowed the parents of one of the victims to address the court. Also, Naves addressed the court directly and offered an allocution, in which he read, in part, from a letter he had written to the court.

¶6 During his presentation to the court, Naves's counsel began by noting that Naves objected "to the recommendation of prison, and certainly object[ed] to the recommendation of consecutive time." Counsel pointed to a number of considerations that, in his view, weighed against Naves being sentenced to prison, including the fact that Naves had a family— a wife and two young children—who relied on him, that Naves had been a productive and employed member of society as an adult, and that Naves had himself been a victim of sexual abuse as a child. Counsel argued that Naves was a particularly good candidate for treatment options, and urged the court, in lieu of a prison term, to put Naves on probation and send him to a residential facility that would provide "long-term, intensive" psychological treatment. "In the alternative," counsel urged the court, if it was set on sending Naves to prison, to impose concurrent rather than consecutive sentences. Counsel noted that the imposition of concurrent sentences would give the Board of Pardons more flexibility to decide how long Naves should serve. Finally, as a "last alternative," counsel asserted that, at minimum, the court should run the first two counts concurrently

because those counts involved "the same victim" as part of "the same incident."

¶7     In the course of making his argument, Naves's counsel attempted to rebut AP&P's position that Naves had not sufficiently accepted responsibility for his actions. To this end, counsel asserted that Naves "definitely had some deep problems" and had "been a pedophile," but that Naves "knows that," has "admitted that," and has "accepted responsibility throughout," as indicated by his "totally honest and open" demeanor in both of "his interviews that took place in this case" and his psychological treatment.

¶8     Before announcing its ruling, the court stated that it had read the presentence report, as well as "a number of letters" sent in support of Naves, including Naves's own letter. The court noted Naves's history of having been sexually abused himself and stated that it had "empathy for" Naves, but opined that Naves's personal history was "not justification for" his recent behavior. The court also considered how imposition of a prison sentence upon Naves would affect Naves's family, and noted the "poor treatment prognosis" Naves was given in the psychosexual evaluation. Ultimately, the court rejected Naves's request for probation, and sentenced Naves to prison on all counts. With regard to whether those sentences would be imposed concurrently or consecutively, the court adopted counsel's suggested "last alternative," and imposed concurrent sentences on the first two sexual abuse of a child counts but consecutive sentences on the other counts.

ISSUES AND STANDARDS OF REVIEW

¶9     Naves now appeals,[1] and asks us to consider two issues. First, Naves argues that his attorney rendered ineffective

_____

1. For those readers wondering how Naves is able to now appeal a sentence imposed in 1997, the district court ruled in 2018, upon

(continued…)

assistance. "When a claim of ineffective assistance of counsel is raised for the first time on appeal, there is no lower court ruling to review and we must decide whether the defendant was deprived of the effective assistance of counsel as a matter of law." *Layton City v. Carr*, 2014 UT App 227, ¶ 6, 336 P.3d 587 (quotation simplified). Second, Naves asserts that the district court abused its discretion when it failed to impose concurrent sentences on all of the counts to which Naves had pled guilty. "We afford the [district] court wide latitude in sentencing and, generally, will reverse a [district] court's sentencing decision only if it is an abuse of the judge's discretion." *State v. Reece*, 2015 UT 45, ¶ 81, 349 P.3d 712 (quotation simplified). Because—as we explain below—Naves failed to properly preserve his specific challenge for appellate review, we examine it here for plain error. "The plain error standard of review requires an appellant to show the existence of a harmful error that should have been obvious to the district court." *State v. Hansen*, 2020 UT App 17, ¶ 10, 460 P.3d 560 (quotation simplified).

ANALYSIS

I

¶10 Naves first asserts that his attorney rendered constitutionally ineffective assistance in two respects: first, by

---

(…continued)

motion from Naves, that following imposition of his sentence, Naves had not been advised of his right to appeal, and that he would have exercised that right had he been so advised. Thus, pursuant to rule 4(f) of the Utah Rules of Appellate Procedure, and applicable case law, the district court reinstated Naves's thirty-day window within which to file a valid notice of appeal. *See* Utah R. App. P. 4(f); *Manning v. State*, 2005 UT 61, ¶ 31, 122 P.3d 628. Naves filed a notice of appeal within the reinstated thirty-day window.

telling the court that Naves had "been a pedophile" in the course of oral argument during the sentencing hearing, and second, by suggesting that, as a "last alternative," the court could choose to run the sentences for two of Naves's counts concurrently and impose his remaining sentences consecutively.

¶11 To establish ineffective assistance, Naves must show both (1) that his counsel's performance was deficient, in that it "fell below an objective standard of reasonableness," and (2) that this "deficient performance prejudiced the defense" in such a way that there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984); *see also State v. Scott*, 2020 UT 13, ¶ 28, 462 P.3d 350; *State v. Ray*, 2020 UT 12, ¶ 24, 469 P.3d 871. Because "[f]ailure to satisfy either part of the ineffective assistance test is fatal to a defendant's claim," *State v. Popp*, 2019 UT App 173, ¶ 48, 453 P.3d 657 (quotation simplified), we need not "address both components of the inquiry if we determine that [Naves] has made an insufficient showing on one," *see Archuleta v. Galetka*, 2011 UT 73, ¶ 41, 267 P.3d 232 (quotation simplified).

¶12 The first part of this test—deficient performance— requires Naves to establish that his attorney's performance "fell below an objective standard of reasonableness." *Scott*, 2020 UT 13, ¶ 31 (quotation simplified). We "indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance" when evaluating counsel's performance under this standard. *Strickland*, 466 U.S. at 689. In doing so, we ask "whether counsel's assistance was reasonable considering all the circumstances" of the case, recognizing that the "reasonableness of counsel's challenged conduct must be judged on the facts of the particular case, viewed as of the time of counsel's conduct." *Ray*, 2020 UT 12, ¶ 31 (quotation simplified). As our supreme court has noted, the federal constitution demands that attorneys provide "reasonable assistance" to be effective. *See id.* ¶ 34. In evaluating counsel's performance, we "often include an analysis of whether there could have been a sound strategic reason for counsel's"

challenged action because, when a valid strategic reason for the action exists, "it follows that counsel did not perform deficiently." *Scott*, 2020 UT 13, ¶ 35; *see also Ray*, 2020 UT 12, ¶ 34 ("If it appears counsel's actions could have been intended to further a reasonable strategy, a defendant has necessarily failed to show unreasonable performance." (quotation simplified)).

¶13    The second part of the ineffective assistance test—prejudice—requires Naves to show that there is a reasonable probability that the case would have come out differently had counsel not performed deficiently. *See State v. Garcia*, 2017 UT 53, ¶ 48, 424 P.3d 171. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceeding. *Strickland*, 466 U.S. at 694. In undertaking a prejudice analysis, we "consider the totality of the evidence before the judge or jury and then ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." *Garcia*, 2017 UT 53, ¶ 28 (quotation simplified). In attempting to show that there was a "reasonable probability of a different outcome" absent counsel's deficient performance, Naves faces "a relatively high hurdle to overcome." *See id.* ¶ 44.

A

¶14    Naves first argues that his attorney rendered ineffective assistance when, during the sentencing hearing, counsel acknowledged that Naves "definitely had some deep problems" and had "been a pedophile." Counsel made these statements in the context of rebutting AP&P's contention that Naves had not accepted responsibility for his wrongdoing. Indeed, counsel also told the court, in the same narrative, that Naves had admitted to the present crimes and acknowledged that he had "other victims," that Naves had "accepted responsibility throughout" the proceedings, and that Naves had exhibited a "totally honest and open" demeanor in both "his interviews that took place in this case" and his psychological treatment. In this context, we are not necessarily persuaded that counsel's use of the term

"pedophile" was unreasonable, especially given the presence of the term in the presentence report.

¶15 However, even assuming, without deciding, that counsel performed deficiently by stating that Naves had "been a pedophile," Naves has not demonstrated a reasonable probability that the outcome of the sentencing hearing would have been different had counsel not used that term. At sentencing, the district court was, of course, aware that Naves had just pled guilty to five counts of inappropriate sexual behavior with underage boys, including three counts of sexual abuse of a child. The court had reviewed AP&P's presentence report, in which the investigating officer referred to Naves as a "pedophile" and in which AP&P recommended consecutive prison sentences. The court was also aware of Naves's criminal history, specifically that Naves had been convicted once before of lewdness involving a child in California, and that Naves had admitted that he had "a few [other] victims over the years," including as many as three victims under the age of fifteen. In this context, Naves's attorney's use of the term "pedophile" during the sentencing hearing was highly unlikely to have affected the ultimate outcome of the proceeding. Stated another way, Naves has not carried his burden of demonstrating that, but for his counsel's single, discrete use of the term "pedophile," there is a reasonable probability that Naves would have received a more lenient sentence. Accordingly, Naves's first claim of ineffective assistance fails for lack of prejudice.

B

¶16 Naves next asserts that his counsel rendered ineffective assistance when he suggested that the court may, as a "last alternative," allow two of his sentences to run concurrently, and impose the remainder of Naves's sentences consecutively. We note that "[t]here are countless ways to provide effective assistance in any given case," and that "[e]ven the best criminal defense attorneys would not defend a particular client in the same way," so "a court must indulge a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance." *See Strickland*, 466 U.S. at 689.

¶17 In this instance, we cannot agree with Naves that his attorney acted unreasonably by choosing to lay out various alternative options for the court at sentencing. In many cases, including this one, an attorney might make a reasonable strategic decision to offer a court various sentencing options. In this case, given AP&P's recommendation for consecutive prison sentences on all counts, counsel could have believed it in his client's best strategic interests to offer the court several options that were all more lenient than AP&P's recommendation. In this case, the strategy appears to have borne fruit, given that the court accepted the "last alternative" and ran two of the sentences concurrently, rather than running all of them consecutively.

¶18 As a reviewing court, "we will not second-guess a trial attorney's legitimate use of judgment as to trial tactics or strategy." *State v. Wilson*, 2020 UT App 30, ¶ 41, 461 P.3d 1124 (quotation simplified). In any event, given the circumstances of Naves's case, and judging counsel's actions by a reasonableness standard informed by "the facts of the particular case, viewed as of the time of counsel's conduct," we cannot conclude that counsel performed deficiently. *See Ray*, 2020 UT 12, ¶ 31 (quotation simplified). Accordingly, Naves's second claim of ineffective assistance fails under the first part of the test.

II

¶19 Next, Naves asserts that the district court abused its discretion when it imposed consecutive rather than concurrent sentences on some of the counts to which Naves pled guilty. We begin by assessing whether Naves properly preserved his particular challenge for our review, and we conclude that he did not. We then proceed to review this issue for plain error, and conclude that the district court did not plainly err.

A

¶20    "Generally speaking," a litigant must make "a timely and specific objection . . . in order to preserve an issue for appeal." *State v. Pinder*, 2005 UT 15, ¶ 45, 114 P.3d 551 (quotation simplified). That is, the litigant must "present the issue to the [district] court in such a way that the court had the opportunity to resolve it." *State v. Gailey*, 2015 UT App 249, ¶ 5, 360 P.3d 805. When a litigant fails to raise a timely and specific objection to the district court, the issue remains unpreserved for appellate review. *See id.* We "will not consider an issue to which no timely and specific objection has been made unless the [district] court committed plain error or exceptional circumstances exist." *State v. Martin*, 2017 UT 63, ¶ 25, 423 P.3d 1254 (quotation simplified).

¶21    In this case, Naves's specific challenge to the district court's sentencing decision is that the district "court did not adequately weigh [the] statutory factors prior to imposing consecutive sentences." We have previously explained that this particular sentencing challenge is not adequately preserved by "[m]erely presenting mitigating evidence and asking the sentencing court for a different sentence." *See State v. Samul*, 2018 UT App 177, ¶ 12, 436 P.3d 298 (quotation simplified). Rather, "[i]n order to preserve for appellate review an argument that a sentencing court erred by imposing consecutive sentences without considering all of the relevant statutory factors and by failing to give adequate weight to various mitigating factors, a defendant must specifically raise that issue with the sentencing court and must provide that court with supporting evidence and relevant legal authority." *Id.* (quotation simplified).

¶22    Naves cannot "demonstrate[] that he specifically objected to or otherwise brought to the [district] court's attention the court's alleged failure to consider the requisite statutory factors in imposing [the] sentence." *See State v. Tingey*, 2014 UT App 228, ¶ 3, 336 P.3d 608. Rather, Naves merely "ask[ed] for concurrent sentences" or probation "and present[ed] mitigating evidence at sentencing" below. *See Samul*, 2018 UT App 177, ¶ 12. There is no indication in the record that Naves specifically objected to his

sentence on the basis that the district court had failed to appropriately consider the statutory factors. And per our precedent, this leaves his challenge to the district court's sentencing decision unpreserved for appellate review. *See id.*

B

¶23 Although the issue is unpreserved, Naves asks us to review it for plain error. As noted above, even outside the plain error context, a district court enjoys wide discretion in fashioning an appropriate sentence. *See State v. Reece*, 2015 UT 45, ¶ 81, 349 P.3d 712 ("We afford the [district] court wide latitude in sentencing and, generally, will reverse a [district] court's sentencing decision only if it is an abuse of the judge's discretion." (quotation simplified)). "A court abuses its discretion in sentencing when it fails to consider all legally relevant factors or if the sentence imposed is clearly excessive." *State v. Sanchez*, 2017 UT App 229, ¶ 2, 409 P.3d 156 (quotation simplified). However, "we will not assume that the [sentencing] court's silence, by itself, presupposes that the court did not consider the proper factors as required by law." *State v. Helms*, 2002 UT 12, ¶ 11, 40 P.3d 626. Rather, "[i]t is the defendant's burden to demonstrate that the [sentencing] court failed to properly consider legally relevant factors," and this burden cannot be met "by merely pointing to a lack of written findings or the existence of mitigating circumstances." *State v. Bunker*, 2015 UT App 255, ¶ 3, 361 P.3d 155. "Instead, when reviewing a court's sentencing decision against a challenge that it failed to consider the required statutory factors, we begin with the presumption that the court properly considered the factors." *Samul*, 2018 UT App 177, ¶ 21 (quotation simplified).

¶24 This already-deferential standard of review becomes even tougher for a defendant who has failed to preserve the issue for our review. "To demonstrate plain error, a defendant must establish that (1) an error exists; (2) the error should have been obvious to the [district] court; and (3) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant, or phrased differently, our

confidence in the verdict is undermined." *State v. Munguia*, 2011 UT 5, ¶ 12, 253 P.3d 1082 (quotation simplified). In this context, then, we will reverse only if the district court plainly and obviously failed to appropriately consider the statutory factors in imposing sentence.

¶25    Under the applicable statute, a district court considering the appropriate sentence to impose upon a defendant must "consider the gravity and circumstances of the offenses and the history, character, and rehabilitative needs of the defendant in determining whether to impose consecutive sentences." Utah Code Ann. § 76-3-401(4) (Michie Supp. 1997). Based upon our review of the record in this case, the district court appears to have considered and appropriately weighed these factors. In announcing its sentencing decision, the court discussed the presentence report, Naves's personal and family history, the statements made by the victims' parents, Naves's own letter and statement, and the recommendations made by experts who had interacted with Naves over the course of the proceeding. The court also noted that it had reviewed the presentence report, something that strongly indicates that the court considered all of the required factors. *See State v. Perkins*, 2014 UT App 176, ¶ 5, 332 P.3d 403 (per curiam) (stating that, where a "court utilized a detailed presentence investigation report (PSI), there is no basis from which to assume that the . . . court failed to consider all relevant statutory factors").

¶26    As noted above, "[i]t is the defendant's burden to demonstrate that the [sentencing] court failed to properly consider legally relevant factors" in making its sentencing decision. *See Bunker*, 2015 UT App 255, ¶ 3. Naves has not carried this burden here, and has not carried his burden of demonstrating that the court abused its discretion at all—let alone clearly or obviously—in the manner in which it considered and weighed the various factors.

¶27    Finally, Naves argues that the district court should have better articulated its reasoning for imposing consecutive, rather than concurrent, sentences for certain of his crimes, and asserts

that the court's failure to do so constitutes an abuse of discretion. In support of this contention, Naves points to the language of the then-current Utah Code, which stated that "[s]entences for state offenses shall run concurrently unless the court states in the sentence that they shall run consecutively." Utah Code Ann. § 76-3-401(1). He notes that the relevant language evidenced a statutory preference for concurrent sentences, *see State v. Strunk*, 846 P.2d 1297, 1301 (Utah 1993) (stating that this statute "favors concurrent sentences"), and claims that the statute implied a requirement that any court choosing to impose consecutive sentences specifically "address the statutory preference" and explain why it has chosen to deviate therefrom. But Naves can point to no statutory language expressly setting forth any such requirement, nor has he directed us to any case law interpreting the statute in that way.[2] As we interpret the applicable statute, a sentencing court is—as discussed above—required to consider the statutory factors when imposing sentence and, if the court fails to specify whether the sentences on the various counts will run concurrently or consecutively, the sentences will be deemed to run concurrently. But we perceive no requirement for the court to specifically address any statutory preference, present in

2. Naves's citations to *State v. Galli*, 967 P.2d 930 (Utah 1998), and *State v. Strunk*, 846 P.2d 1297 (Utah 1993), are unavailing. We do not read *Galli* and *Strunk* as establishing any requirement for a court to specifically address the statutory language favoring concurrent sentences. Those cases—as concerns consecutive versus concurrent sentencing—were about preserving flexibility for the Board of Pardons in making parole decisions. *See Galli*, 967 P.2d at 938; *Strunk*, 846 P.2d at 1301–02. Although both cases reference the statutory language at issue, and even note that the "'statute favors concurrent sentences,'" *see Galli*, 967 P.2d at 938 (quoting *Strunk*, 846 P.2d at 1301), neither case references any requirement that a court, in imposing sentence, must specifically address the statutory language favoring concurrent sentences, and neither case suggests—or even implies—that a court's failure to do so would call its sentencing decision into question.

the then-applicable statute, for concurrent sentences. The court therefore did not err, let alone plainly so, when it did not specifically discuss any such statutory preference.

¶28 Accordingly, Naves has not carried his burden of demonstrating that the court obviously abused its discretion in imposing sentence upon him.

## CONCLUSION

¶29 Naves has not carried his burden of demonstrating that his attorney rendered ineffective assistance at sentencing, either by using the term "pedophile" or by providing sentencing alternatives to the district court. Naves has also not demonstrated that the court obviously abused its discretion when it imposed consecutive sentences for certain of his crimes.

¶30 Affirmed.

———————